## COOPER ET AL.. *v.* HARMON ET AL.

[No. 21,177. Filed February 21, 1908.]

1. WORDS AND PHRASES.—*Highways.*—*"Extending Into Two or More Counties."*—Under §7669 Burns 1908, Acts 1905, p. 521, §21, providing for the location, vacation or change of a public highway "extending into two or more counties," a highway may be located so as to lie along and upon the line between two counties. p. 114.
2. HIGHWAYS.—*On County Lines.*—*Cost.*—*Apportionment.*—Where highways are built along and upon the line dividing two counties, the cost thereof is chargeable in equal parts to each county. p. 116.
3. SAME.—*Petitions.*—*Necessary Allegations.*—*Cost.*—*Utility.*—It is not necessary, in a highway petition, to allege that the proposed highway will be of public utility or that the cost thereof will be less than the benefits. p. 117.
4. SAME.—*Petitions.*—*Signatures.*—*Motion to Dismiss.*—A motion to dismiss a highway petition for the reason that the same was signed by the surnames and initials only of the Christian names, should be overruled. *Vawter* v. *Gilliland,* 55 Ind. 278, overruled. p. 117.

From Boone Circuit Court; *Samuel R. Artman,* Judge.

Highway petition by William M. Harmon and others, against which Jacob Cooper and another remonstrate. From a judgment for petitioners, remonstrants appeal. Transferred from Appellate Court under §1393 Burns 1908, Acts 1907, p. 237, §2. *Affirmed.*

*T. J. Terhune* and *A. J. Shelby,* for appellants.

*P. H. Dutch* and *Noah Laughrun,* for appellees.

GILLETT, J.—Appellees instituted this proceeding before the Board of Commissioners of the County of Boone to locate a highway having for its median line the line dividing the counties of Marion and Boone. The highway was established by the board, and appellants appealed to the circuit court, where the result was also adverse to them.

The principal question in the case is whether, under section twenty-one of the act of 1905 (Acts 1905, p. 521, §7669 Burns 1908), the board had jurisdiction to lo-

1. cate a highway on and along the county line, and not otherwise extending into the other county. Under said section, in case proceedings are instituted for the location, vacation or change of a publc highway, ''extending into two or more counties,'' the board before whom the petition is first filed shall have jurisdiction. It is contended on behalf of appellants that the word ''extend'' means to stretch or lengthen out. We find it defined in 2 Century Dict., 2090, as, ''to stretch out in any direction, or in all directions; carry forward or continue in length or enlarge in area; expand or dilate; as to extend roads, limits or bounds.'' It was held in *South Boston R. Co.* v. *Middlesex R. Co.* (1877), 121 Mass. 485, under a statute which contained a grant of power to municipal authorities to authorize street railroad companies to extend the location of their tracks within the territorial limits of the city, that it was competent to authorize a street railway company to construct an additional track, although it was not connected with an existing track of the company except by an intervening track belonging to another corporation. This holding was put on the ground that it was the purpose to authorize the location and establishment of street railway tracks by the local authorities, and thereby to obviate the necessity of an appeal to the legislature whenever it was desired to establish a new street railway or to authorize an existing street railway company to locate additional tracks.

In *Middlesex, etc., Traction Co.* v. *Metlar* (1903), 70 N. J.

L. 98, 99, 56 Atl. 142, it was said: "The word 'extend,' both by etymology and by common usage, is an exceedingly flexible term, lending itself to a great variety of meanings, which must in each case be gathered from the context, which is owing to the fact that it is essentially a relative term, referring to something already begun, hence in a concrete sense it has no persistent meaning, although abstractly it always implies increase or amplification as distinguished from inception—as, for instance, 'the extension of a man's business,' or 'of his line of credit,' or 'of the due-time of his debts.' Extension in space may be in any direction; it is not confined to mere linear prolongation, as the prosecutor contends. In a proper context it may mean broadening instead of prolongation."

The act of 1852 (1 R. S. 1852, p. 307, §6726 *et seq.* Burns 1901) was for many years the only legislation which could be said to give any sanction to the location of county-line highways. Section one of that act, relative to highways in more than one county, referred to highways as "running into more than one county," while the proviso of said section referred to the vacation or change of highways so opened, which "extend into more than one county." The language of the act last referred to is, on the whole, really narrower than the present act, and yet it is a fact of such common knowledge that it may be judicially assumed to exist, that under said former act many county-line highways were built.

The act of 1905, *supra,* is a comprehensive enactment relative to the location of highways, and in view of this, as well as of the language of section 123 thereof, it would be difficult to resist the conclusion that for most purposes at least it was designed to furnish the governing rule of procedure concerning the location of highways. In view of the practical construction given to the act of 1852, wherein, as shown, the same word "extend" is found, and of the fact that the General Assembly was attempting by the later act to enact

a highway law which would be comprehensive in its character, it would be strange indeed if, having provided for the inception and carrying on of the work of locating highways in two or more counties, in the county where the petition was filed, the law-making power should confine the right to a longitudinal extension of the proposed highway. into another county, denying the power to locate a county-line highway, every lineal foot of which would be upon territory in which the board had a local, and therefore a peculiar, interest.   If the word "extend" were to be given its primary meaning, as applied to a line of any character, of a continuation longitudinally without a break, difficulty would arise as respects the location of a highway which has its beginning in the county where the proceedings are commenced but, as projected, runs along the county line for some distance before wholly passing into the other county.   Besides, we may further suggest that we find no legislation upon the statute books which might authorize the building of county-line roads which would not be fairly open to substantially the same technical objection which is here urged by appellant's counsel, should that objection be allowed to prevail; so, if their construction be adopted, the dernier conclusion would seem to follow that county-line highways could not be built.

There is nothing in the context of section twenty-one which forbids the construction which our remarks indicate should be given said section, unless it be the provision that the county in which the highway shall be ordered established may recover from the other county or counties a proportionate amount of the expenses paid out, "according to the proportion of the length of such highway in each of such other counties."   This, however, does not necessarily forbid the view that in the case of a county-line highway each county, while paying according to the proportion of the length of highway in such county, is nevertheless to pay but one-half of the expense of the highway.   The essential purpose of said provision was to secure an equitable

distribution of the expenses, and it is further to be observed that, if we stick in the bark on the language suggested, highways could not be located which run along county lines for a part of the way, although they might, in the most substantial sense, "extend" into another county by running for a considerable distance therein after leaving the county line. It is our conclusion that it was the legislative purpose to authorize the building of county-line highways under section twenty-one of the act of 1905.

It was not necessary to allege that the proposed highway would be of public utility, nor that the cost thereof would be less than the benefits. *Bowers* v. *Snyder* (1882), 88 Ind. 302; *Conaway* v. *Ascherman* (1884), 94 Ind. 187. Under section twenty-one of the act of 1905 it is the duty of the board to appoint viewers, if it finds the jurisdictional facts to exist, and the matters suggested are to be considered afterwards.

It is further objected that the petition does not properly aver the qualifications of the petitioners, and that seventeen of the number used initials, instead of their Christian names, in signing the petition. We fail to perceive what statutory qualification of the petitioners is not averred—assuming, without deciding, that that is necessary —but we assume that the two objections are in reality one and the same, or, in other words, that it is objected that it cannot be determined from the face of the petition that the statutory qualifications exist among the petitioners whose signatures are regular. Appellants' motion before the board was to dismiss the petition; but we are of opinion that at the most they would only have been entitled, upon proper motion, to have the full Christian and surname of each petitioner entered of record. *Good* v. *Burk* (1906), 167 Ind. 462, and cases cited. Upon this point *Vawter* v. *Gilliland* (1876), 55 Ind. 278, is disapproved.

Judgment affirmed.