Domenick Antenucci et al. *v.* The Hartford Roman Catholic Diocesan Corporation

Inglis, C. J., Baldwin, O'Sullivan, Wynne and Daly, Js.

Argued April 12—decided May 10, 1955

*Joseph P. Cooney,* with whom, on the brief, were *Henry F. Cooney* and *John F. Scully,* for the appellant-appellee (defendant).

*Richard M. Feingold,* with whom, on the brief, was *Marshall S. Feingold,* for the appellants-appellees (plaintiffs).

DALY, J. In this action the plaintiffs sought an injunction restraining the defendant from using land owned by it for a cemetery, and other relief. They withdrew the first of the three counts of their complaint. On the second, in which they claim that the defendant's proposed use of its land would constitute a nuisance, judgment was rendered for the defendant. On the third, in which they claim that the proposed use would violate the zoning regulations of the town of Bloomfield, judgment was rendered for them. The plaintiffs and the defendant have appealed.

The finding recites the following facts: Mount St. Benedict's Cemetery is located in the town of Bloomfield, which adjoins the city of Hartford on the north. The cemetery contains 127 acres and extends easterly into the town of Windsor. The land was acquired in three parcels, the first by St. Patrick's Church Corporation in 1873, the second by St. Joseph's Cathedral Corporation in 1911, and the third by the defendant in 1916. The defendant still holds legal title to a portion of the cemetery, which it operates and manages. It also owns property on the westerly side of Blue Hills Avenue. It desires to use this, too, for cemetery purposes and, if permitted to do so, will operate and manage it in connection with the existing cemetery. Blue Hills Avenue runs from Hartford in a northerly and westerly direction across Bloomfield to the town of Windsor. The present cemetery is the principal place of burial in the Hartford area for members of the Roman Catholic faith. It is maintained in excellent condi-

tion, with attractive planting and landscaping, and has a frontage of 2250 feet on the easterly side of Blue Hills Avenue. On August 17, 1943, the defendant purchased its property on the west side of Blue Hills Avenue. The tract is irregular in shape and has an area of about 83 acres, with a frontage on Blue Hills Avenue of 850 feet, of which about 450 feet is opposite the existing cemetery. The property has long been known as the Hubbard Farm and for many years has been operated as a farm. Since 1943, the defendant has leased it for farming purposes.

The plaintiff Samuel Attardo owns a two-family house at 40 Hubbard Street and the rear of his lot abuts on the Hubbard Farm property. The plaintiff Bert Shampain owns a small residence at 150 Brookline Avenue and the rear of his lot also abuts on the farm. The plaintiff Domenick Antenucci owns a large lot, 800 feet by 500 feet, on Douglas Street, and one side of this lot abuts on the farm. Blue Hills Avenue is a main, heavily traveled, thoroughfare, and for about a mile north of the Bloomfield-Hartford line a strip on either side of the avenue is zoned for business. A large outdoor motion picture theater is located near the Hubbard Farm, and between the farm and the city line there are, within the business zone, numerous commercial establishments, including gasoline stations, an outdoor storage yard for old cars, a furniture shop, a plumbing shop, a cabinet works, two monument yards, a branch library, a lot for pony rides, a radio transmission station with high towers topped by signal lights, a shoemaker's shop, cheap eating places and similar businesses. The properties in the rear of the strips zoned for business, including the side streets on which the plaintiffs live, are in an R-10

residence zone. R-10 is the lowest class of residential zone in the town. For the most part, houses located on these streets and in this zone are of moderate or low cost.

About one-half or three-quarters of a mile west of Blue Hills Avenue, there is a through highway from Hartford known as Granby Street. The property on the west side of this street is zoned for industry. It has several small manufacturing establishments on it, and there is a likelihood of more. Just south of the Hartford city line on Granby Street, there is a very extensive low-cost housing development which is visible from the Hubbard Farm. Four or five funeral processions, on the average, travel on Blue Hills Avenue each day to Mount St. Benedict's Cemetery. On the several religious holy days and on Mother's Day and Memorial Day, when it is customary to visit the graves of the dead, there is heavy traffic to and from the cemetery. In the evening, continuing very late, there is, except for a few months in the winter, heavy traffic to and from the outdoor motion picture theater. The use of the Hubbard Farm for a well-kept cemetery conducted by the defendant is far more desirable than the use which would result if it were developed in a manner similar to the development, in recent years, of most of the property in this area.

Zoning regulations became effective in Bloomfield on March 15, 1950. They contain no provision for the establishment of any new cemetery within the town. The defendant has not sought an amendment of the regulations to permit a new cemetery on the Hubbard Farm property. The highest class of zone under the regulations is R-30. Bloomfield Zoning Regs., Art. 2, § 1. Among the permitted uses in an R-30 zone is the "extension of an existing

cemetery." Ibid. In 1953, the defendant filed a map in the office of the town clerk of Bloomfield showing the proposed development of the Hubbard Farm as a cemetery and made application to the building inspector for permission to use it for cemetery purposes. On April 29, 1953, a certificate of use for those purposes was issued. The application was made by the defendant only, and the certificate was issued to it alone. Blue Hills Avenue separates the existing cemetery and the Hubbard Farm. The latter nowhere adjoins the former. It is a different and separate tract of land. The highway which lies between the two properties cuts each completely off from the other. The plaintiffs claim that the proposed use of the Hubbard Farm would have a depressing effect upon them and their families and would disturb the enjoyment of their homes. The plaintiffs Attardo and Shampain claim that they will sell their properties and move elsewhere if the cemetery is extended. At certain times, traffic entering the cemetery is congested on Blue Hills Avenue for a distance of 1500 feet to the south and also blocks the entrances to the side streets on the east side of the avenue south of the cemetery. Funeral processions entering the Hubbard Farm property would, at certain times, increase the traffic load on Blue Hills Avenue and on the narrow side streets on which the plaintiffs reside.

The defendant, as appellant, claims that the trial court erred in concluding that the proposed use of the Hubbard Farm cannot properly be regarded as the "extension of an existing cemetery," in concluding that the defendant may not proceed to use it for cemetery purposes under the certificate issued by the building inspector, and in rendering judgment for the plaintiffs on the third count.

The plaintiffs claim that the Hubbard Farm cannot be used for the "extension of an existing cemetery" because St. Patrick's Church Corporation and St. Joseph's Cathedral Corporation did not join with the defendant in applying for the certificate of use and the certificate was not issued to all three corporations. They base this contention upon the fact that the defendant holds legal title to only a portion of the land comprising the existing cemetery. Since the defendant operates and manages the entire cemetery, it is in possession of all of it. It is not contesting with the other two corporations, each of which is the holder of the legal title to a portion of the cemetery. The party "in possession is regarded by the law as the owner, except in a contest with one who has the true title." *Chapel-High Corporation* v. *Cavallaro,* 141 Conn. 407, 411, 106 A.2d 720; *Fowler* v. *Fowler,* 52 Conn. 254, 257. Therefore the certificate of use was correctly applied for and was issued to the proper party.

The plaintiffs also maintain that the cemetery cannot be increased in size by the use of land, acquired for the purpose, on the opposite side of a public highway. An abutting owner is presumed under the law of this state, no evidence having been offered to the contrary, to own the fee of the land to the center of the highway. Therefore, as to the land within the limits of the highway, an abutting owner has all rights not incompatible with the public easement. *Allen* v. *Mussen,* 129 Conn. 151, 155, 26 A.2d 776; *State* v. *Muolo,* 119 Conn. 323, 326, 176 A. 401. "A highway is nothing but an easement, comprehending merely the right of all the individuals in the community to pass and repass, with the incidental right in the public to do all of the acts necessary to keep it in repair." *Peck* v. *Smith,*

1 Conn. 103, 132; *Newton* v. *New York, N.H. & H.R. Co.*, 72 Conn. 420, 426, 44 A. 813. The easement in the public does not comprehend any interest in the soil or give the public the legal possession of it. The right of freehold is not touched by establishing a highway. It continues in the original owner of the land in the same manner as before the highway was established, subject to the easement. *Peck* v. *Smith*, supra. The adjoining proprietors have a right to every use and profit which can be derived from it consistent with the easement. The soil of a highway descends to heirs and passes to grantees as an appurtenant to the land adjoining, and whenever the highway is discontinued, the adjoining proprietors hold the land discharged of the easement. *Knothe* v. *Zinzer*, 96 Conn. 709, 713, 115 A. 477; *Peck* v. *Smith*, supra, 146.

As the defendant is regarded by law as the owner of the entire existing cemetery and holds the legal title to the Hubbard Farm, which has a frontage of about 450 feet opposite the cemetery, it is also regarded as the owner of that portion of the land in the highway, about 450 feet in length, contiguous to both the cemetery and the Hubbard Farm. It has, by reason of that ownership, privileges in the highway which are not common to the public generally. *Newton* v. *New York, N.H. & H.R. Co.*, supra, 427. "The word 'extend,' both by etymology and by common usage, is an exceedingly flexible term, lending itself to a great variety of meanings, which must in each case be gathered from the context, which is owing to the fact that it is essentially a relative term, referring to something already begun, hence in a concrete sense it has no persistent meaning, although abstractly it always implies *increase* or *amplification* as distinguished from *inception* . . . .

Extension in space may be in any direction; it is not confined to mere linear prolongation. . . ." *Middlesex & Somerset Traction Co.* v. *Metlar,* 70 N.J.L. 98, 99, 56 A. 142; *Cooper* v. *Harmon,* 170 Ind. 113, 115, 83 N.E. 704. The fact that the Hubbard Farm is not contiguous to the existing cemetery is of no consequence in this case, since the defendant is regarded as the owner of the intervenient land, subject to the easement. The proposed use of the Hubbard Farm can properly be regarded as the "extension of an existing cemetery," a permitted use, and the defendant may proceed to use the Hubbard Farm under the certificate issued by the building inspector.

The plaintiffs, as cross appellants, in their first assignment of error claim that the trial court erred in finding certain facts. The changes sought would not directly affect the ultimate facts upon which the judgment depends. As no useful purpose would, therefore, be served by making these corrections, they are not made. *Cole* v. *Associated Construction Co.,* 141 Conn. 49, 51, 103 A.2d 529; Maltbie, Conn. App. Proc., § 93. In their second assignment, the plaintiffs contend that the court erred in refusing to find facts as set forth in their request for a finding. They contend that the court should have found that the use of the Hubbard Farm as an extension of the cemetery would depreciate the market value of the neighboring properties and that the existing cemetery has caused a depreciation in value of property adjoining it, as testified to by their witnesses. The trial court is at liberty to discredit any witness or a multitude of witnesses, if it deems that it has cause to do so. It is one of the important functions of a trier to determine the relative credit to be given to oral evidence. *Eastern Sportswear Co.* v. *S. Augstein &*

*Co.,* 141 Conn. 420, 422, 106 A.2d 476; Maltbie, Conn. App. Proc., p. 122.

The plaintiffs also claim that the court erred in concluding that the proposed use of the Hubbard Farm will not be a nuisance in law or in fact, and in rendering judgment for the defendant on the second count. What constitutes a residential district which affords a basis for injunctive relief naturally defies precise definition. Not only is the extent to which nonresidential uses exist a factor but there is the further question as to how extensive the area embraced in a residential section shall be. The extent of the territory is only one factor. The number, kind, value and locations of the structures therein, the uses to which the territory is adapted, and all the surrounding facts and circumstances are to be considered. No hard and fast rule can be laid down. Whether the locality is of such a strictly residential character as to warrant an injunction is largely a question of fact. *Jack* v. *Torrant,* 136 Conn. 414, 424, 71 A.2d 705. What constitutes a nuisance in one locality may not in another. *Nailor* v. *C. W. Blakeslee & Sons, Inc.,* 117 Conn. 241, 245, 167 A. 548.

The court's conclusions are to be tested by the finding and not by the evidence. *Klahr* v. *Kostopoulos,* 138 Conn. 653, 655, 88 A.2d 332. No conclusion of the trial court can be disturbed by this court unless it appears that it either involves the application of some erroneous rule of law material to the case or was unreasonably drawn from the facts found. *Johnson* v. *Shattuck,* 125 Conn. 60, 62, 3 A.2d 229. The trial court viewed the Hubbard Farm, the entire area surrounding it, including the properties of each of the plaintiffs, the neighborhoods in which they are located and the existing cemetery in the area of Blue Hills Avenue. It did

not err in concluding, upon this view and the facts found, that the proposed use of the Hubbard Farm will not be a nuisance in fact. Neither did it err in concluding that the proposed use will not be a nuisance in law.

There is no error on the plaintiffs' appeal; there is error on the defendant's appeal, the judgment is set aside and the case is remanded with direction to render judgment for the defendant on the third count.

In this opinion the other judges concurred.