[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a record or administrative appeal involving a subdivision in the Town of Westport. In an unusual twist this court is being called upon to determine not the propriety of the defendant Planning and Zoning Commission's approval or disapproval of a subdivision, but rather whether the defendant Commission's refusal to rule on the merits of the application was proper. The excellent briefs by all the parties indicate that there are really no serious disagreements about the facts underlying this appeal.
All parties concede that the plaintiff, Lorna B. Christophersen, owns property known as Lot 5 on Map 7764 recorded in the Westport Land Records, which is located at 265 Saugatuck Avenue in Westport, and consists of 1.05 acres and her residence. She received this property, which is situated on the Saugatuck River, from her father Charles Blount, Jr. and her mother Mercedes M. Blount by quitclaim deeds executed in December 1977 and April 1978 respectively. The parents owned a parcel of 6.51 acres, and they deeded 1.05 acres to their daughter, and retained 5.46 acres. The deeds to the plaintiff describe the land conveyed as "Lot #5 on map entitled, `Map Prepared for Charles Blount, Jr.,' November 25, 1974, prepared by Leo Leonard, Surveyor, to which reference is hereby had for a more particular description". This map was subsequently recorded by the plaintiff as Map 7764 which stated thereon that it was "not an approved subdivision. This map drawn for lease purposes only."
There also seems to be no disagreement that subdivision CT Page 2545 approval was required to make this a marketable lot, but was never sought until 1989 when Mrs. Christophersen applied to the Commission to, in her words, "legitimize" her property in the proceedings now at issue. Although a subdivision in Westport is defined in accordance with General Statutes 8-18
as the division of a lot into three or more parcels, and hence everyone is entitled to one "free cut", so to speak, the property of plaintiff's parents consisting of 6.51 acres had already itself been subdivided from a larger parcel and hence had used up its free cut.
Nor is there any dispute that the Commission refused to hear the subdivision application of Mrs. Christophersen on its merits and gave as its reason her "failure to comply with Section 52-4.1 in that the application form was not signed by the owners." This section of the Zoning Regulations and Subdivision Regulations of the Town of Westport provides that "Application for approval of a subdivision shall be made to the Commission in writing on forms prescribed by the Commission. The application shall be signed by the applicant, and if the subdivision is proposed by an applicant other than owner of the land to be subdivided, the application shall be signed by the owner."
Two other sections of the regulations that relate to the word "owner" should be noted. One states that the use of the singular shall include the plural unless the "natural construction of the wording indicates otherwise" (Section 5-1); the other provides that the term "owner" refers to someone owning "at least 50% of the interest in the real property" (Section 5-2).
Thus the defendant Commission ruled in effect that it would not hear plaintiff's application on its merits unless Mrs. Christophersen obtains the approval and signatures of the owners of the balance of the property from which her lot had been carved out. The plaintiff, however, cannot obtain those signatures because she is estranged from her mother and from her sister, Elena B. Dreiske, who are trustees of the Mercedes M. Blount Trust and the Charles Blount, Jr. Trust (her now deceased father) respectively. These two trusts are the record owner of the remaining tract, the 5.46 acre parcel. Evidently the plaintiff, her mother and sister are all involved in hotly contested litigation concerning these trusts, and not only did the mother and sister refuse to sign the plaintiff's application for a subdivision, but they actively opposed any such approval and retained counsel to so advise the Commission.
Four other significant facts are also essentially CT Page 2546 uncontested. One is that the minutes of the hearing before the Commission reflect that Mrs. Christophersen conceded that she advised her father not to seek subdivision approval back in 1978 and 1979 because that would increase his taxes. Fact number two is that ever since the plaintiff received title to Lot 5, the property has been taxed separately by the Westport assessor and the plaintiff has been paying taxes to the tax collector for over ten years. Fact three is that the plaintiff applied to the defendant Commission pursuant to section 51-3 of the regulations for a waiver of the requirement that the owners of the large tract sign the application form, and that the Commission rejected this request. See also General Statutes 8-26 ("Such regulations may contain provisions whereby the commission may waive certain requirements under the regulations. . . where conditions exist which affect the subject land and are not generally applicable to other land in the area . . ."). Finally, there is no question that Mrs. Christophersen successfully applied to the Westport Zoning Board of Appeals just in her own name for variances of certain requirements including street frontage and setbacks, so that her lot would be considered as conforming to the regulations, although the Board of Appeals did state that its actions were conditional upon subdivision approval by the defendant Commission.
As the situation now stands, the plaintiff owns this piece of property, but it seems clear that her title is not marketable, because of the failure of the mother, the father and the plaintiff to obtain subdivision approval. See General Statutes 8-25(a) ("No subdivision of land shall be made until a plan for such subdivision has been approved by the commission.") Mrs. Christophersen seeks the opportunity to present her application for a subdivision to the Commission, but has not been afforded a hearing because of the relationship with her mother and sister who refuse to join in the application.
From the denial by the Commission of her request for a subdivision, the plaintiff appealed to this Court pursuant to General Statutes 8-28, 8-8. A hearing was held and it was determined that the plaintiff as the owner of Lot 5 was aggrieved for the purposes of pursuing this appeal. Bossert v. Norwalk, 157 Conn. 279, 285, 253 A.2d 39 (1968). It should be noted that the defendants did not contest aggrievement. They did not, in other words, move to dismiss this action on the theory that Mrs. Christophersen was not "aggrieved". The relationship between the concept of aggrievement for purposes of pursuing an appeal to the courts and of standing to make the initial application to a CT Page 2547 local land use agency will be discussed shortly.
At their request the trustees of the two trusts, the plaintiff's mother and sister, were later joined as defendants in this action.
The plaintiff seeks an order of this court directing the defendant Commission to entertain her application on its merits. The issue for this court is whether plaintiff's signature alone constitutes compliance with section 52-4.1 of the Westport ordinance, or whether the defendant Commission was correct in refusing the application because it was not joined in by the owners of the remaining or larger parcel of the two lots in question.
Plaintiff makes a number of arguments in support of her appeal. The first is that since she alone owns Lot 5, just her signature on the application for approval of the division of this lot from the larger parcel should suffice. The defendants use the analogy of a pie, of which Lot 5 is one slice. In order to comply with section 52-4.1, they maintain that the application must be signed by all the owners of the whole pie, not just by the owner of the slice being cut away.
Plaintiff also claims that the Commission should have waived the requirements of its own regulations that the signatures of the owners of the larger parcel were necessary because this regulation is purely procedural, not substantive, and in effect deprives the plaintiff of her opportunity to obtain marketable title, and thus renders her property practically useless. The defendants counter that the section permitting waiver, 51-3, is restricted to those situations which involve "physical site conditions", i.e., something unusual about the land itself.
The plaintiff argues that section 52-4.1 as interpreted by the defendant Commission prevents her from ever being able to present her application for a subdivision, and is not only without the scope of General Statutes 8-25
authorizing planning commissions to subdivide property, but also violates her right to due process, is arbitrary and unreasonable, constitutes a taking of property without compensation and has no reasonable relationship to the public health, safety and welfare. The defendants assert that General Statutes 8-26 provides that a local commission may prescribe the application form for a subdivision (All plans for subdivisions . . . shall be submitted to the commission with an application in the form to be prescribed by it."), and therefore a requirement that CT Page 2548 at least fifty per cent of the owners sign the application is proper and just, and also that it is not the defendant Commission's fault that the plaintiff is estranged from her mother and sister. The defendants also argue that Mrs. Christophersen still owns the property, still uses Lot 5 for residential purposes, and that nothing has been "taken" from her in a constitutional sense because her property has not been diminished in value by the Commission's decision.
The plaintiff also claims that the Town of Westport and the defendant Commission as its "agent" are both "estopped" from refusing to hear her application because Lot 5 is a separate lot for tax purposes, and has been taxed for over ten years, and it is currently assessed at $737,500. The defendants argue, on the other hand, that plaintiff always knew that her lot had not been properly subdivided, and, moreover, that she received good value for her tax money over the years in terms of municipal services, and that she was taxed on the property because she is admittedly the owner of Lot 5. Furthermore, the Commission claims that estoppel requires some action on its part that "induced" the plaintiff to believe that she had a legal subdivision and that no such action ever occurred.
Mrs. Christophersen further contends that section 52-4.1 of the Westport regulations should properly be construed to permit her signature alone on the application because the does in fact own Lot 5, "the land to be subdivided," and that if Lot 5 is not properly subdivided, then it is a part of the larger tract of which she necessarily is a part owner, and her signature on the application should for that reason suffice. The plaintiff further argues that this section was designed to apply to an optionee or a contract purchaser where the actual owner's signature could be required, but not to a case such as hers where she asserts that a "de facto" subdivision has already occurred, both because of the tax assessor's actions and also the granting by the Zoning Board of Appeals of the variances referred to previously. The defendants take the position that to be an owner of the larger parcel Mrs. Christophersen would have to own at least fifty per cent of the large undivided tract, and that in fact she only owns about one-sixth of the total property and therefore is not an "owner" within the scope of the Regulations. The defendants also argue that it is not Lot 5 that is being subdivided, but rather the proposal seeks to divide 6.51 acres into two parcels Mrs. Christophersen's 1.05 acres, and the second lot, retained by the two trusts, consisting of 5.46 acres. They further contend that the requirement regarding the signature of the owners of a proposed subdivision ensures that only proper CT Page 2549 applicants will apply for a subdivision.
The unique nature of this case is illustrated by certain remarks of both a Commission member and an attorney for the Town of Westport who advised the Commission on this matter. At the hearing in February 1990 at which the Commission refused to hear plaintiff's application on its merits, one of the members of the defendant Commission stated "that his sympathies go to her", referring to Mrs. Christophersen. The return of record also includes a memorandum from an Attorney Votto, of the office of the town attorney of Westport, in which she responds to certain questions presented by the Commission and makes what I consider to be some very apt remarks. The attorney states, "The case at issue has been a difficult of for all involved and clearly all board and commission members and other municipal officials who have worked with this case understand the frustration plaguing the individual to whom . . . the smaller parcel of property was deeded." This attorney goes on to state that "Logic dictates that boards and commission, especially those involved with planning and zoning, should be able to take some sort of action which would alleviate some of the problems associated with this smaller parcel. The law, however, does not support logic in this case." I believe that this attorney is saying in effect that logically the defendant Commission should hear this application on its merits, but that the "law" will not permit it to do so.
Analysis of this case should start with General Statutes 8-26, which provides that all plans for subdivisions including "those which were not submitted to the Commission for required approval . . . or whether or not conveyances have been made of any of the property included in such subdivisions . . . shall be submitted to the commission . . ." This seems to effectively undercut the rational of Dooley v. Town Plan Zoning Commission,151 Conn. 151, 153, 195 A.2d 432 (1963), cited by the defendants, which determined that a commission was without authority to act on a subdivision "made without authority", and could not entertain an application concerning "a subdivision already made illegally and without authority".
It appears that the issue of standing or sufficient ownership interest to present an initial application to a land use agency is rather similar to the concept of standing to pursue an appeal from such agency to the court, and therefore Smith v. Planning Zoning Board, 3 Conn. App. 550,490 A.2d 539 (1985), later affirmed in 203 Conn. 317,524 A.2d 1128 (1987), should be reviewed. The Smith case of CT Page 2550 course is not specifically on point because it involved a co-holder of a life interest, and the question of whether such a person was aggrieved under General Statutes 8-8. The case does, however, discuss the meaning of the word "owner" and refers to our Marketable Title Act, General Statutes 47-33b et seq., and holds in effect that an interest protected by that act should be sufficient for purposes of taking an appeal under General Statutes 8-8. The case also discusses whether the plaintiff was entitled to appeal even though her husband, a co-holder of the life estate, did not join in the appeal, and the Appellate Court determined that one co-owner alone was in fact entitled to appeal.
In Gill v. Petrazzuoli Bros., Inc. 10 Conn. App. 22,27, 521 A.2d 21 (1987), the Appellate Court discussed the meaning of ownership and states that it is susceptible to many interpretations and should be given a flexible rather than a restrictive interpretation. A definition of ownership that was cited with approval refers to one who "must sustain the loss of property in case of destruction. Mrs. Christophersen could arguably be included within this definition on the theory that she is suffering from the loss of marketable title and is without the opportunity to do anything about it.
An earlier case that does concern standing to apply to a municipal land use agency is Richards v. Planning Zoning Commission, 170 Conn. 318, 365 A.2d 1130 (1976). This case concerned an interpretation of an ordinance which did not specifically require that the owner apply for or authorize the application. It went on to point out that beneficial owners, equitable owners, lessees, optionees, all should have the right to apply to a municipal board. The Supreme Court indicated that the test was whether the applicant is in control of the property, whether he is in possession or has a present or future right to possession, whether the use applied for is consistent with the applicant's interest in the property, and the extent of the interest of other persons in the same property, are all relevant considerations in making that determination." Id., 323-24.
A principal stockholder in a corporation was allowed to apply for a building permit in Loew v. Falsey, 144 Conn. 67,74, 127 A.2d 67 (1956) (". . . the application as completed complied substantially with the code requirements. This is all that the law demands."), as was a party in possession in Antenucci v. Hartford Roman Catholic Diocesan Corporation,142 Conn. 349, 355, 114 A.2d 216 (1955), who sought a certificate of use from the building inspector. ("The party CT Page 2551 `in possession is regarded by the law as the owner, except in a contest with one who has the true title.'").
If all of these parties or groups may obtain a hearing from a local board or apply for permits, because they are deemed to be "the real party in interest" (Richards, supra, 323), why not Mrs. Christophersen who is the actual owner of lot 5?
Employing the Richards criteria and recognizing that this is, as far as I know, a case of first impression, I have concluded that the plaintiff's appeal should be sustained and that the defendant Commission should hear her appeal for a subdivision on its merits.
I certainly agree that conceptually the defendant Commission has the right to require the consent of the owners of a proposed subdivision, and also that local agencies should be able to prevent improper parties from applying for a subdivision. For example, it would certainly be proper to require more than a request solely by a contract purchaser or solely by a lessee, but it strikes me that Mrs. Christophersen stands in a markedly different posture from that of a contract purchaser, a lessee, an optionee. She is in fact an owner of this particular parcel. She owns one hundred per cent of this lot, and it seems anomalous to prevent her from even obtaining a hearing.
I have somewhat of a sense also that the father and the mother who deeded the property to the plaintiff in the first place should not now either personally or through their trustees be in a position to prevent the plaintiff from even applying to obtain marketable title.
In reaching this conclusion I have also had in mind two other concepts; first, that the court system and inferentially municipal land use agencies should be open to persons with legitimate requests for consideration, and also that it is to the general benefit of all concerned to at least address the question of marketable title rather than leaving this issue in a state of limbo, so to speak.
On balance, then, and recognizing that it is certainly a close and interesting issue, my opinion is that the defendant Commission should hear this application on its merits. It should not base its decision on a restricted interpretation of its regulations concerning the meaning of ownership and on a regulation which could well be considered as beyond the scope of the enabling statute, General Statutes 8-25. CT Page 2552
Accordingly, plaintiff's appeal is sustained and the matter is remanded to the defendant Commission in order to afford Mrs. Christophersen a hearing on her application for a subdivision on its merits.
So Ordered.
Dated at Stamford, Connecticut this 18th day of March 1991.
William B. Lewis, Judge.