[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff owns property which abuts the property which is the subject of the application, as proven by the evidence submitted to this court. The plaintiff is therefore an aggrieved party as prescribed by Conn. Gen. Stats.
The plaintiff appeals from the decision of the Planning and Zoning Commission of the Town of Enfield granting the application for a Special Use Permit, filed by Lego Building Corporation, for approval to construct an office complex on premises located at 555 Taylor Road, Enfield, Connecticut.
The applicant LEGO is the owner of a large tract of land bounded on the east by Taylor Road, an improved and utilized public highway. The south portion of the property has access, through a public highway Print Shop Road, to the improved and utilized public highway on the south, Moody Road. Moody Road runs in a general east-west direction and intersects with Taylor Road, a short distance generally south of the southeast corner of the subject property of LEGO. Hence, the LEGO property presently has access to Taylor Road on the east and to Moody Road on the south, both of which are well travelled and well maintained public highways.
The applicant Lego proposes to construct an office building and parking facilities on the southeast portion of its property. The proposal would add an office building to its existing manufacturing facility on that general site. CT Page 1729
The plan, as submitted to the Commission, proposes to connect the parcel to "Cybulski Road", a road which runs north and south, parallel to and approximately 800 feet two means of access to Moody Road.
Cybulski Road is presently paved thirty feet in width for a short distance from its intersection with Moody Road. Thereafter, as it continues north, the pavement narrows to from sixteen to twelve feet, and then stops. The Cybulski family owns property both east and west of the pavement of Cybulski Road.
The applicant represented to the Commission that Cybulski Road is an existing town roadway easement extending from Moody Road to a terminus at the LEGO south property line. The applicant represented to the Commission that the public easement of Cybulski Road is sixty feet in width throughout its length from Moody Road to a claimed terminal point at the south boundary of the LEGO property. The initial proposal of LEGO was to widen the pavement of Cybulski Road to thirty feet, extending to the boundary of the LEGO property. The proposed width was subsequently reduced to a paving of 24 feet of width by the Commission, reflecting its concern for the historic character of the buildings on Cybulski Road.
At the public hearings there was substantial opposition to the use of Cybulski Road. The various members of the Cybulski families testified as to their concerns, and their vigorous opposition to the proposed extended repavement and proposed use of Cybulski Road. Their testimony set forth serious apprehension concerning potential damage to the historic buildings due to traffic use and to road construction vibration. And to potential surface corrosion of the buildings due to vehicular traffic emissions. The Cybulskis further expressed concern for the safety of the family members which they believe may be caused by expanding the pavement to a close proximity of the residential buildings. They expressed their position that the use of Cybulski Road was unnecessary, as the LEGO site had access to Moody Road through Print Shop Road, 800 feet to the west, and access to Taylor Road on he east. The Cybulskis were not represented by counsel at the hearings, nor were other opponents represented by counsel. It does not appear from the record that the Cybulski family CT Page 1730 members possess any legal expertise whatsoever.
The history of Cybulski Road is of major import to a determination of this appeal. At the hearing the Cybulski family members related to the Commission a concise history of the Cybulski and LEGO land. The Cybulskis purchased the large tract of what is now the Cybulski and the LEGO land, with the buildings and improvements, from the Shaker Community in the year 1913. A history of the Shaker Communes in North America was placed before the Commission by Charles Cybulski.
The history of the Shaker communities and their contribution to American heritage was well described by Mr. Cybulski. The Shaker Communities in America date back to the year 1774. The community in Enfield existed from 1792 to 1913, at which time the few remaining Shakers sold the large tract of land with the remaining historic buildings to Peter and Stanislau Cybulski. The Shakers are historically recognized for their industriousness, agricultural acumen and craftsmanship, their religious and racial tolerance, and their hospitality to outsiders. Their communities formed a significant chain in the "underground railroad", helping slaves escape from the South. The Shaker experience is unquestionably a significant part of the American heritage.
The two residential buildings occupied by the Cybulskis consist of a large 3 1/2-story brick dwelling facing west, with farming outbuildings to the rear and to the south, and a smaller brick dwelling facing east. The existing narrow road pavement passes between the dwellings. These buildings are the remaining Shaker buildings on the land which was purchased by the Cybulskis from the few remaining members of the Shaker Community in 1923. They represent what is proffered to be the last vestige of the Shaker tradition in this state.
At the public hearing the Commission received letters from Shaker preservation societies throughout New England urging the Commission to not open Cybulski Road to the LEGO site for fear of damage to the buildings, and concern for the aesthetic disruption of what is essentially a historic site. The buildings are listed in the National Register of Historic Places. The United States Department CT Page 1731 of Interior, National Park Service, wrote urging the Commission to not widen the road, and to explore alternatives. The Connecticut Historical Commission and the Enfield Historical Commission also expressed similar serious concern by letters sent to the Commission.
The Commission approved the application, attempting to address these concerns by limiting the enlarged repaying of Cybulski Road to 24 feet of width, and placing other restrictions, such as replanting and the like, as conditions of its approval.
The plaintiff then obtained counsel and filed this appeal. The attorney, in filing the appeal, set forth seven reasons for appeal, including failure to comply with the zoning regulations, failure to enforce zoning regulations and lack of support of sufficient evidence.
Prior to the hearing before this court the attorneys for the defendants moved for permission to supplement the record by entering a deed. The motion described the deed as "Warranty Deed by Zygmund Cybulski dated January 10, 1967, conveying Cybulski Road and drainage easement to the Town of Enfield." The court granted the motion. The defendant, the moving party, then moved to withdraw the deed, which motion the court granted. That deed, whatever it may be, is not before the court
Shortly prior to the trial, Attorney James W. Sherman filed his appearance for the plaintiff. He moved that the court take evidence as to the propriety of the Commission granting permission to utilize and repave Cybulski Road to cause the road to be paved 24 feet wide and extended up to the south boundary of the LEGO property. The claim is that portions of the road sought to be paved, outside of the present pavement, are not part of a town road, as represented to the Commission by LEGO, and that the expanded pavement would result in an unconstitutional taking of the Cybulski land.
In deference to the rights of the plaintiff, as guaranteed by Article V of the Amendments to the Constitution of the United States, and in deference to such rights guaranteed by Article First, Section 11 of the Constitution of the State of Connecticut, and pursuant to CT Page 1732 Conn. Gen. Stats. 8-8 (2)(k) the court determined to take evidence concerning the question of an unconstitutional taking, as raised by the plaintiff.
At the trial the plaintiff declined to produce evidence, claiming that neither the zoning commission nor this court at this proceeding had the power to try title to land. The defendant then produced substantial evidence to address the issue, the plaintiff having deferred to its contention that the court could not try title in this zoning appeal.
The court agrees with the plaintiff that it is not the purview of this court to try title to land in a zoning appeal. It is, however, the duty of this court determine whether the Commission acted arbitrarily, illegally and in abuse of its discretion, in this court's reviewing the decision of a zoning commission.
The record before the zoning commission reveals that the Commission based its determination as concerns Cybulski Road upon plans drawn up by and submitted by the applicant. And by the testimony of the applicant that "In addition Cybulski Road is an existing town roadway extending from Moody Road to a dead end at the LII (LEGO) property line." (Record, page 1). No deeds, town highway maps or other substantiating source documents were submitted to the Commission to support that contention.
Zoning applications often delineate and set forth the boundaries of a public highway as part of the application. The court acknowledges that in the usual circumstances, whereby a public highway is in frequent use and its boundaries are clear and delineated, there may be no need on the part of an applicant to demonstrate the specific delineation of the bounds of a public easement by title search or physical survey of the boundaries or production of town highway maps. To so request would generally be unnecessarily burdensome, as highway delineation is generally a matter of public record.
Those usual circumstances are, however, not the circumstances involved in the instant application. The question of the metes and bounds of the public highway, Cybulski Road, were specifically, though inartfully, placed CT Page 1733 in issue by the laymen Cybulskis at the public hearing.
Although a zoning commission is entitled to rely upon representations of the applicant, made in its application data and its oral representation at the hearing, yet if it is demonstrated that those representations are inaccurate, and are material to the Commission's decision, then the decision cannot meet the standards to which judicial review must be directed. Any such decision which would result in a taking of private land for public use, through governmental action, rises to constitutional proportions.
The evidence before the court demonstrates the following. When the property was sold by the Shakers to the Cybulskis on January 14, 1913 (Defendant's Exhibit L) and on November 3, 1913 (Defendant's Exhibit K) the parcels were described as bounded by an unnamed "highway", and "highway leading north." This road, a part of which apparently was later to become "Cybulski Road", had no specific name at that time. At some undetermined later date a successor to a part of the old road took its name from the name of the then property owners, Cybulski. The earliest reference to a successor road as having any name at all, to wit "Cybulski Road", appears in the town highway listing of December 31, 1968 (see Exhibit N). The defendant introduced into evidence an old highway map captioned "Atlas of Hartford County, Conn" dated July, 1931 (Exhibit W) showing the highways as they existed in this portion of the Town of Enfield in 1931. The map shows a road, without name, bordered by the land of the Cybulskis, as extending from what is Moody Road in the south through the length of the then Cybulski land, including the now LEGO property, all the way to Shaker Road at its north terminus. Thus, the old road originally extended through the entirety of the subject land presently owned by the applicant LEGO.
The application submitted to the Commission does not show any part of the old road as a road on the LEGO property. Hence, it appears obvious that something happened to the old road. Ms. Eileen Cybulski, in responding to a question before the Commission stated: "Back in 1938 I believe from what we are told there was a hurricane and it wiped out the road. The town decided not to fix the road and came to the family at that time, 1938, CT Page 1734 and asked the family if they would mind if the town closed the road. And the family said no, they didn't mind."
The question which should have been before the Commission, and hence before this court, is, what is the present status of Cybulski Road? Is it a public highway, and if so, how wide is it, and for what length does it exist?
As stated previously, the evidence before the board is that Cybulski Road is paved in narrow width from the intersection of Moody Road for some distance north.
As to the width of Cybulski Road. There was evidence submitted before the court to demonstrate that an old road existed at the time of the deed from the Shakers. The old road was of unspecified surface composition. The defendant produced evidence at this trial to indicate, by physical survey accomplished for this trial, by using the deeds from the Shakers, that the old road easement which may have separated the Shaker dwelling houses was 70 feet wide. A survey map dated February 13, 1974, to which the deed from Cybulski to LEGO dated June 18, 1974 makes reference, proffers Cybulski Road as being 60 feet in width. (Exhibit B) That conveyance map shows that monuments were placed upon the land at that time, 1974, purportedly reflecting the boundaries of the road. This is subject to serious question. Part of one of the buildings, a slab, east of the pavement extends into what would be a 60 foot road width. (See Exhibits A, B, C, D). The present road pavement does not abut, and is some distance from, these markers.
The existence of this intrusion into what is proffered to be a 60 foot road width raises substantial concern as to the actual road width of "Shaker Road" at that location. The pavement is only twelve to sixteen feet wide. Further, the February 1974 map states "No recorded street line on Cybulski Road. Street line designated from c of pavement." This appears to be a pragmatic judgment choice to establish physical boundaries for and of the conveyance to LEGO. The conveyance map speculates a street line where non existed of record.
The length of the road is still another matter. The evidence before the court reveals that the distance from CT Page 1735 Moody Road to the south border of the Lego property is 1,000 feet (Defendant's Exhibit M). Cybulski Road is paved for a distance north from Moody Road. The evidence submitted to this court reveals that as of December 31, 1968 the town of Enfield was listing Cybulski Road as an improved road for a distance of .18 miles. (see Exhibit H). The town listing as of December 1991 also lists Cybulski Road as improved for .18 miles. 5280 feet x .18 equals 950.4 feet. That is 49.6 feet short of the LEGO property. The town listing for its roads is specific to a precise percentage point.
Next, reference to the map "Town Roads, Town of Enfield" revised to 1978 (Court I) drawn to scale 1" = 1000' also shows Cybulski Road, by scale, as an improved local road of less than 1,000 feet in length from Moody Road to its terminus. The map does not show any other portions of the predecessor to Cybulski Road at all, as either an "unimproved local road" or a "private road." The same type of Town Roads map, revised to December 31, 1983, shows exactly the same information and the same lengths as shown in the 1978 map, again showing Cybulski Road as being less than 1,000 feet in length. (Exhibit S) These maps, using their scale, show Cybulski Road as being approximately 60 feet short of the south line of the LEGO property.
There is no question but that the Town maintains the .18 mile of paved road. The defendant contends that this is "approximately" 1,000 feet. See p. 65 trial transcript. The court does not credit that contention .19 of a mile would equal 1003 feet, and that percentage, .19 miles, would be "approximately 1000 ft" — not the .18 miles of pavement recorded by the town.
The court looks to the evidence before the Commission to determine what was submitted to support the applicant's contention that Cybulski Road extends to the south border of the LEGO property. Maps or drawings were drawn up and submitted by the applicant to the Commission. These are hearing Exhibits 69, 70, 71. Each of the drawings, upon close examination, show the pavement ending at a point south of the LEGO property line. One of the drawings, appears to be of a scale showing the pavement ending approximately 50 feet south of the LEGO line. At the point CT Page 1736 where the pavement ends the drawings show that there commences a semi-circular gravel driveway passing in an arc to the northeast and entering the Cybulski home lot around a fence just north of the three-story residence. The driveway is described as "existing gravel drive" on the colored road construction map, "Megson Hegle, Civil Engineers and land surveyors."
No part of the arc of this driveway touches or abuts the south boundary of the LEGO property. The semicircular gravel driveway attaches to the end of the pavement and provides private access to the outbuildings at the rear of the Cybulski dwelling house. The road as presently paved is obviously quite adequate to serve the needs of citizens who occasionally come by to view the historic Shaker buildings, and for the needs of persons who reside in those buildings, and their invitees.
The only conclusion available to the court from this evidence is that when the town in 1938 determined to no longer maintain the old road as a public road throughout its length, it determined to continue, or to establish, a road to a point no greater than was necessary to give the Cybulskis access to a point from which they could attach a private gravel drive, immediately north of the dwelling buildings. This would be adequate for access to Moody Road, thereby providing necessary access to the town highway system. Such a decision by the town would be both rational and logical, as there were no other buildings north of the dwelling house, and no apparent use or need for the public to use any part of the former road which may have existed north of the terminus of the pavement. There would be no reason for the road to exist north of that terminal point. There is no evidence whatsoever, either before the Commission or before this court, to indicate that the town ever maintained, or that anyone had any use of or need for the road beyond the terminus of the present pavement, after 1938.
It is certain from the evidence before the court that LEGO believes that the old road was abandoned. It does not list or set out its portion of the former road on any of its plans or maps submitted to the Commission. Nor does it refer to its section of the old road in any of its testimony. To the contrary the drawings CT Page 1737 submitted to this court, for this trial, Exhibit M, shows the course of the former old road as going right through LEGO's proposed building. It should be obvious that no one can build a building on top of a public road. If the former Cybulski Road is still a public road in its old 1931 configuration, this appeal would have to be sustained as a matter of law, as the Commission would have no authority whatsoever to grant such permission to build a building on top of a public highway.
All of the evidence before this court points to the obvious conclusion that most or all of the old road was extinguished as a public road in 1938.
 "A highway may be extinguished by direct action through governmental agencies, in which case it is said to be discontinued; or by non-user by the public for a long period of time with the intention to abandon, in which case it is said to be abandoned.
Doolittle v. Preston, 5 Conn. App. 448, 451 (1985).
The record before the Commission and before the court, is devoid of any evidence to indicate, one way or the other, whether the Town officially "discontinued" the highway as a town road in 1938, under the procedures set forth in Conn. Gen. Stats. 13a-49 or its predecessor statutes. The court cannot imply, nor could the Commission imply, statutory discontinuance by virtue of the testimony of Eileen Cybulski. That recollection is only of a conversation with town officials. The Commission should, however, have been alerted to that remote possibility of governmental statutory discontinuance by virtue of the testimony of Ms. Cybulski. Had inquiry been made, and had governmental discontinuance occurred, the public records would certainly have shown the occurrence of, and the dimensions and particulars of any such statutory discontinuance.
Assuming no Conn. Gen. Stats. 13a-49 discontinuance, inquiry is required to be made as to the question of "abandonment."
"Abandonment in this jurisdiction is a question CT Page 1738 of fact. It implies a voluntary and intentional renunciation but the intent may be inferred as a fact from the surrounding circumstances."
Appeal of Phillip, 113 Conn. 40, 46 (1931). See New London v. Pequot Point Beach Co., 112 Conn. 340, 347 (1930).
Although no precise period of time for non-use by the public has been set by case law for abandonment, a period of sixty years of such non-use has been held to be certainly adequate. See Newkirk v. Sherwood, 89 Conn. 598,605 (1915). In the present case there exists not only nonuse for over 50 years but also the affirmative declared intention of the town officials to relinquish the road. "At all events non-user, if continued `for many years' is prima facie evidence of abandonment. City of Hartford v. N. York N. Eng. Rr.R. Co., 59 Conn. 250, 260 (1890).
(Emphasis in original).
As to the width of a road:
 "A road cannot be curtailed in its width by the encroachment of the adjoining properties without unmistakable evidence of abandonment on the part of the town."
New London v. Peguot Point Beach Co., 112 Conn. 340, 347
(1930).
In the instant case, although the intrusion of part of a building slab into the claimed 60 foot roadway is not conclusive, it is certainly substantial evidence as to the limited extent of the resulting width of the highway, subsequent to what appears to be the abandonment of the old road. (See Trial Exhibit B)
A public highway can be abandoned in its length and in its width. The evidence before the court raises serious and bona fide legal questions as to whether the former highway has been abandoned or discontinued as a public highway. Abandonment appears to be most probable. The evidence before the court, which evidence is contrary to the unsubstantiated representations made to the Commission, is that Cybulski Road presently exists, in the locus or CT Page 1739 vicinity of the old road, as a narrow paved road, in width twelve to sixteen feet, except for a small section of thirty feet in width at its southerly terminal at Moody Road; and in length approximately 950 feet from its southerly terminal, which is fifty feet short of the subject property of LEGO.
If the highway was abandoned the law is clear as to the consequences thereof.
 The easement in the public does not comprehend any interest in the soil or give the public the legal possession of it. The right of freehold is not touched by establishing a highway. It continues in the original owner in the same manner as before the highway was established, subject to the easement. The adjoining properties have a right to every use and profit which can be derived from it consistent with the easement. The soil of a highway descends to heirs and passes to grantees as an appurtenant to the land adjoining and whenever the highway is discontinued the adjoining proprietors hold the land discharged of the easement.
Antenucci v. Hartford Roman Catholic Diocesan Corporation,142 Conn. 349, 356 (1955).
Where abandonment takes place by virtue of non-user it takes place as a matter of law. Such an abandonment is not generally recorded in the land records and does not lend itself to detection by title search. The Cybulskis, in deeding the property to LEGO may well have been unaware of the special legal implications of abandonment of the old road, and hence may have added to the confusion by a listing of Cybulski Road as a sixty foot road in the map and deeds drawn up for the private title transfer to LEGO in 1974. (Exhibit B)
Whether the buyer or conversely the seller conducted that survey, drew the map, and prepared the deeds is both unknown, and immaterial. No part of the land shown as Cybulski Road, south of the south boundary of the Lego property, was either conveyed or meant to be conveyed to LEGO. Nor was there any conveyance to the town. The CT Page 1740 private deed and the map serve to delineate only the physical boundaries of the property conveyed to LEGO, utilizing the parties best understanding of the physical boundaries of the record title. The deed to LEGO and the accompanying map, do not purport to convey or to re-convey to the Town any part of what is therein captioned as "Cybulski Road". Nor do the facts support a concept of either statutory dedication (Connecticut General Statutes Sec. 13a-48) or a conclusion of common law dedication, except as may pertain to the existing pavement. See Country Life Properties v. Essex, 23 Conn. App. 281; (1990); Hamann v. Newtown, 14 Conn. App. 521 (1988).
The Cybulskis could not cause un-abandonment or nondiscontinuance of the old road by merely listing in a private conveyance "Cybulski Road" as a sixty foot highway terminating on the LEGO south line. Towns are required to maintain their public highways by statute. No one can thrust that expensive burden upon a town by merely listing land as a public highway in the documents prepared for a private conveyance.
The court determines that the evidence before the Commission consists only of Lego's representation that Cybulski Road is a public highway, 60 feet in width, throughout its entire length from its south boundary to its southerly terminus with Moody Road, coupled with some monuments placed on the land in connection with the private transfer of property to LEGO adjacent to the 60 foot strip. The court determines that the overall question of the road, placed before the Commission in an inartful fashion by the witnesses in opposition, raised serious and essential questions as to the dimensions of Cybulski Road. That question was required to be dealt with by the Commission prior to its approval of the application.
Although a Commission can take note of the physical layout of property through its own knowledge and observation, yet had the Commission personally viewed the physical pavement of Cybulski Road that would be of no assistance to the granting of the application, but rather would mitigate against its granting. (At the request of the plaintiff agreed to by the defendant, the court, accompanied by both counsel, personally viewed the site and observed the narrow width of the pavement, and that the CT Page 1741 pavement stops substantially short of the LEGO site, at which point the semi-circular private drive commences).
Mr. Steve Cybulski, though inartfully and without a legal understanding of the legal implications of abandonment, placed the issue squarely before the Commission in his statement, "Well, I think we were here first if we want to go on squatter's rights." See Antenucci v. Roman Catholic Diocesan Corporation, supra. Such rights of abuttors flow from abandonment, as a matter of law.
The plaintiff in this appeal raises the further question of the failure of the applicant LEGO to delineate the former old road as it passed through the applicant LEGO's property, in its site plans and drawings and oral presentation. The court, in reviewing the evidence submitted at trial, determines that this contention has merit albeit in a roundabout fashion. More properly phrased, the plaintiff is taking the position that if the defendant contends that the former old road, which is the predecessor of the short and narrow paved Cybulski Road, was not abandoned, then the road should have been listed as a public highway on the LEGO land. And therefore the improvements to be made on the LEGO land, which includes paving and the building a structure right on top of the highway, would be illegal as a matter of law. Stated otherwise, either the old road was or was not abandoned. The applicant cannot have it both ways.
The evidence before this court strongly suggests abandonment of the predecessor to Cybulski Road outside of the perimeters of the present pavement of the road. Just as that evidence would support the decision of the Commission to allow the construction on the LEGO property that same evidence would mitigate against the widening and extending of the paved area south of the LEGO property, "Cybulski Road", without a proper determination as to the extent of such abandonment.
The court, in this zoning appeal, cannot try title to real property, nor can the court determine the existence or non-existence of, or the dimensions of, or the extent of public easements upon land. See Conn. Gen. Stats. See Conn. Gen. Stats. 13a-39; Conn. Gen. Stats. 13a-48. CT Page 1742 The only evidence before the Commission as to the proffered dimensions of "Cybulski Road" consist of speculative representations by testimony of the applicant, and by renderings which the applicant had drawn in reliance upon private deeds, and in reliance upon a map drawn up for that conveyance, which merely granted to the applicant its land by metes and bounds.
There was no evidence before the Commission in the form of deeds of grant, town highway maps, evidence of public use, special dedication, or any other substantial evidence to support a determination that Cybulski Road is a public highway sixty feet in width extending from Moody Road to the south boundary of the applicant's land. No physical evidence exists to support such a conclusion. The pavement itself, together with a careful inspection of the details of the plans and drawings submitted to the Commission showing the gravel semi-circular private driveway at the end of the pavement, and the testimony concerning extinguishment of the old road in 1938 would, if anything, lead to a conclusion which is the opposite of that reached by the Commission. What was presented to the Commission was merely an honest belief by the applicant, and that was simply inadequate as a matter of law to support the potential taking of the Cybulski property.
"We conclude therefore that the zoning board, on the basis of the evidence before it, was without power to grant . . ." . See Farrington v. Zoning Board of Appeals, 177 Conn. 186,191 (1979).
". . . the Commission did not have before it sufficient evidence . . ." . In granting the application the Commission acted arbitrarily and in abuse of its discretion." Anastasia v. Zoning Commission, 163 Conn. 187, 191.
The granting of the application allowing the paving of Cybulski Road 24 feet in width throughout the entire distance from Moody Road to the south property line of the applicant Lego's property was illegal, arbitrary and in abuse of discretion.
For the reasons set forth herein the appeal is sustained. CT Page 1743
L. Paul Sullivan, J.