FREDERIC M. RICHARDS ET AL. *v.* PLANNING AND
ZONING COMMISSION OF THE TOWN OF WILTON

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued December 3, 1975—decision released March 9, 1976

*Robert A. Fuller,* for the appellants (defendants).

*Thomas T. Adams,* with whom, on the brief, were *Julian A. Gregory* and *Ralph E. Slater,* for the appellees (plaintiffs).

BOGDANSKI, J. The defendant Wilton planning and zoning commission approved the application of the defendant Wilton board of education for a special permit "to allow the storage of school buses, construction of a maintenance facility, installation of fuel storage tanks and pumps and other related features" on six acres of land which is part of a tract owned by the town of Wilton. The plaintiffs, owners of land located in the immediate vicinity of the proposed site, appealed that decision to the Court of Common Pleas, which sustained the appeal on the ground that because the board of education was not a proper applicant, the commission lacked jurisdiction to approve the application. After our grant of certification, the defendants appealed to this court, assigning error in the court's conclusions.

The material facts, as disclosed by the record submitted pursuant to § 647 of the Practice Book, are not in dispute. The Wilton zoning regulations allow a "public school use" and a "Town of Wilton municipal use" in residential zones, provided a special permit is first obtained from the commission. In 1961, the commission granted a special permit to the Wilton high school building committee to use certain land owned by the town of Wilton "for school purposes." On August 1, 1973, the board of education applied for a special permit seeking to use one of two alternative sites, both of which were located in a residence 2A zone, for the proposed school bus facility. One site was owned by the state of Connecticut. The other, owned by the town of Wilton, was part of a tract devoted to school pur-

poses pursuant to the permit issued in 1961. A school building is located on the southern portion of that property, but the westerly portion, where the proposed site is located, has remained partially wooded.

On August 13, 1973, a public hearing on the application was held. At the hearing, the commission apparently considered the application as one for a "Town of Wilton municipal use." Upon finding that the proposed use would serve a necessary community need, that traffic in the area would not be significantly increased, that the size of the location would present sufficient flexibility for maximum protection of adjoining property owners, and that the proposed use fulfilled all the conditions of the zoning regulations, the commission approved the application.

From that decision, the plaintiffs appealed to the Court of Common Pleas, alleging that the commission acted illegally in several respects. The board intervened as a party defendant. The court found that the board was neither the owner of the site nor the authorized agent of the town with respect to it; that the proposed use was "municipal"; that the duties of the board of education as outlined in § 10-220 of the General Statutes were thus irrelevant to the resolution of the issues; and that the board therefore lacked the legal interest required to qualify as an applicant for a special permit. The appeal was sustained on the ground that the commission lacked jurisdiction to consider the board's application.

In this appeal, the defendants' primary contention is that the board did indeed possess the requisite interest to qualify as an applicant. They argue that in cases involving private parties, where the zoning

regulations did not specifically require an "owner" of property to make application for a permit or variance, this court has allowed nonowners to apply so long as they were able to demonstrate a substantial interest in the property; that the Wilton zoning regulations do not specifically require that the owner apply for a special permit; that the board of education's interest and rights in the proposed site were substantial; and that, therefore, the court erred in concluding that the commission lacked jurisdiction.

The plaintiffs argue that the commission considered the proposed use to be a "municipal use"; that the board's interest in property owned by the town extends only to "school uses"; that the board, as an agent of the state, has no interest in a "Town of Wilton municipal use"; that the Wilton code contains an ordinance which grants control of the subject property to a parks, recreation and conservation commission; and that even if the construction of the bus facility could be considered to be a "school purpose," effectuation of that purpose would require approval of both the town as a school district, and of the parks, recreation and conservation commission.

The issue, then, is whether the Wilton board of education, although not the titleholder to the property, possesses a sufficient interest in it and in the granting of the special permit to constitute the legal interest required to make the present application.

Although the issue as framed is one of first impression, this court has had occasion to consider questions concerning the standing of private parties to apply for special permits and variances. Where zoning ordinances have not specifically required owners to apply or to authorize the application, this court has sustained the issuance of permits to per-

sons who were not owners but who did have substantial interests in the subject property. In *Shulman* v. *Zoning Board of Appeals,* 154 Conn. 426, 431, 226 A.2d 380, we recognized that "[t]he general rule, which applies in the absence of a specific provision to the contrary, is that one who has contracted to purchase property has standing to apply for a special exception or a variance governing its use." See note, 89 A.L.R.2d 663, 669 § 4. In *Loew* v. *Falsey,* 144 Conn. 67, 73, 74, 127 A.2d 67, the New Haven building code required that the application for a building permit contain the full names of the owners of the subject premises. The owner was E. M. Loew, Inc., but the application simply designated the owner as E. M. Loew. In sustaining the issuance of the permit, the court stated: "While the corporation may have held the legal title to the premises, E. M. Loew owned and controlled the corporation. He was the beneficial owner. By analogy, an equitable owner may properly apply for a variance under zoning regulations." In *Nielsen* v. *Board of Zoning Appeals,* 129 Conn. 285, 27 A.2d 392, and more recently in *Chevron Oil Co.* v. *Zoning Board of Appeals,* 170 Conn. 146, 365 A.2d 387, we implicitly recognized the right of certain lessees of property to apply for a permit or variance, and that recognition is in accord with the general rule. See note, 89 A.L.R.2d, 663, 677 § 5. Also worthy of note is *Antenucci* v. *Hartford Roman Catholic Diocesan Corporation,* 142 Conn. 349, 355, 114 A.2d 216, where the defendant alone applied for a certificate allowing the "extension of an existing cemetery," although the property on which the existing cemetery was located was owned by two other corporations in addition to the defendant. The defendant, however, was in possession of the property. In

upholding the standing of the defendant to apply for the certificate, this court stated that except in a contest with one who has true title, the party in possession is regarded by the law as the owner.

Other jurisdictions have recognized the right of one holding an option to buy to apply for a variance; see, e.g., *Smith* v. *Selligman*, 270 Ky. 69, 109 S.W.2d 14; *In re Zoning Variance of Gillen*, 21 Ohio Misc. 84, 255 N.E.2d 313; *Board of Adjustment* v. *Board of Education*, 326 P.2d 800 (Okla.); although there is authority to the contrary; see, e.g., *Burr* v. *Keene*, 105 N.H. 228, 196 A.2d 63. A holder of an option to lease has been held to have standing to request a variance. See *Board of Adjustment* v. *Shanbour*, 435 P.2d 569 (Okla.). In *Bowen* v. *Metropolitan Board of Zoning Appeals*, 317 N.E.2d 193 (Ind. App.), a lessee of commercial property was held to have standing to apply for a variance despite the objection of the lessor, and despite the fact that the application required the "owner's" signature.

From an examination of our cases and those of other jurisdictions, it is not possible to extract a precise comprehensive principle which adequately defines the necessary interest which a nonowner must possess in order to have standing to apply for a special permit or a variance. The decisions have not been based primarily on whether a particular applicant could properly be characterized as an optionee or a lessee, but, rather, on whether the applicant was in fact a real party in interest with respect to the subject property. Whether the applicant is in control of the property, whether he is in possession or has a present or future right to possession, whether the use applied for is consistent with the applicant's interest in the property, and the

extent of the interest of other persons in the same property, are all relevant considerations in making that determination.

In the present case, the Wilton zoning regulations do not require an applicant for a special permit to be the owner of the property. The town of Wilton, which holds the legal title, is not contesting the board's right to apply for the permit. Since the board has the duty to provide school bus transportation, and may enter into contracts for up to five years for that purpose, there is no question but that the board is seriously concerned with the proposed use. General Statutes § 10-220. The proposed facility is clearly related to the duty to provide bus transportation.

The relationship between the board and the town with respect to the subject property is somewhat unusual, however, and the incidents of that relationship are not as precisely defined as are those between a lessee and a lessor, or a vendee and a vendor. Legal title is held by the town. Inasmuch as a special permit to use the property "for school purposes" was granted in 1961, it is apparent that the town holds the property in its capacity as a school district. General Statutes § 10-241. The board of education, however, has substantial powers with respect to property committed to school purposes. In *Canzonetti* v. *New Britain,* 147 Conn. 478, 481, 162 A.2d 695, we stated: "These powers include 'the care, maintenance and operation of buildings, lands, apparatus and other property used for school purposes.' General Statutes § 10-220. The properties here concerned were committed to school use and are under the control of the school committee. The committee is an agency of the state and has

complete charge of public education within the city. The law has conferred upon it broad powers except for specific limitations not involved here. The action of the committee, if within those powers, is not subject to control by the common council or officers of the city. *Fowler* v. *Enfield,* 138 Conn. 521, 530, 86 A.2d 662, and cases cited." See also General Statutes § 10-239.

Although the actual use to which the six-acre site was put prior to the making of this application is unclear from the record, it does appear that the site was "committed to school use." The town acquired the site as part of a tract to be used for school purposes; one school is located on the tract, the building of another is contemplated, and still another school is located across the street on another tract. It appears, then, that the board of education has a substantial interest in how the property is to be used and has extensive control over that determination.

The plaintiffs contend that it is the town of Wilton, and more particularly, the Wilton parks, recreation and conservation commission, not the board of education, which has the power to improve, operate and maintain town land, citing several sections of the Wilton code to that effect. So far as any of these powers are inconsistent with § 10-220, they must yield to the superior powers of the state. *Wallingford* v. *Board of Education,* 152 Conn. 568, 574, 210 A.2d 446; *Sheehan* v. *Altschuler,* 148 Conn. 517, 521, 172 A.2d 897. So long as the property is committed to school use, the control of the board cannot be usurped.

The plaintiffs claim, however, that the use applied for was not a "school use," that the duties of the

board under § 10-220 of the General Statutes are thus irrelevant, and that the board, therefore, has no interest in the property with respect to the proposed use.

We do not agree. It is true that the commission considered the bus facility to be a "municipal use," but that fact does not control the board's standing to apply for a permit. A use can be "municipal" under the zoning regulations but come within the duties of the board under § 10-220. Moreover, even if a proposed use were not clearly related to a duty of the board, the zoning commission would not be the proper authority to determine that the board was acting outside the scope of its powers. Sufficient checks on the board already exist. See, e.g., General Statutes § 10-238; *Canzonetti* v. *New Britain,* supra, 482.

Finally, the plaintiffs argue that even if the proposed bus facility could be considered a "school purpose," it would be a "school construction purpose," and prior approval of the town would be required to carry out the plan. That consideration, however, is not determinative of the issue of standing. Even if approval of the town is necessary, that would not negate the board's interest in the property or its concern with the proposed site. Such approval is simply one step in carrying out a project involving the interplay of governmental functions. The acquisition of a permit is another step. See *Lurie* v. *Planning & Zoning Commission,* 160 Conn. 295, 306, 307, 278 A.2d 799. The zoning commission's approval does not authorize the board of education to erect the facility in total disregard of other requirements of law.

In view of the board of education's relationship to the proposed site, its duty to educate and transport by bus the children of the town, the lack of a specific provision in the zoning regulations requiring the owner to apply for a permit, and the fact that the town itself has not contested the application, we conclude that the board possessed the interest required by law to make the present application. The Wilton board of education was a real party in interest.

There is error, the judgment is set aside and the case is remanded for further proceedings not inconsistent with this opinion.

In this opinion the other judges concurred.