Plaintiffs Thomas M. Daniel and Maria Daniel appeal the decision of defendant Zoning Commission of the City of Norwalk (Commission) granting the application of defendant Cedar West, Inc. (Cedar West) for a permit to construct a "Conservation Development" as provided for in section 118-410 of the Building Zone Regulations of the City of Norwalk.
The subject property is located on North Taylor Avenue, Norwalk, Connecticut, District 5; Block 64c; Lots 153, 286, 326 and Twin Ledge Road Right of Way (R.O.W.) (Return of Record CT Page 4719 (ROR) #2 Letter to Edward Leary, Director, Zoning Commission, dated December 8, 1989.) On December 8, 1989, Cedar West submitted a Special Permit Application #26-89 SP to the Commission to allow construction of fourteen single-family homes in a conservation development. (ROR #2.) On February 21, 1990, a public hearing was conducted by the Zoning Commission on Cedar West's application for a special permit. (ROR #17 copy of minutes of the February 21, 1990 Norwalk Zoning Commission Regular Meeting; ROR #20 Transcript of February 21, 1990 Zoning Commission Meeting.) At the hearing, Attorney Michael Lyons represented the applicant and testified in support of the application. In response to some questions, Allan Speed, the architect of the project, spoke in support of the application. In addition to the oral testimony at the public hearing, the applicant submitted, in support of the application, a traffic study and soil and environmental reports. (ROR #17 and #20.) At the hearing, Attorney Lyons requested that the Commission not vote on the application until after March 15, 1990 when the Norwalk Zoning board of appeals was to decide whether to grant Cedar West's application for variances. (ROR #17 and #20.) Plaintiff Thomas M. Daniel presented testimony in opposition to the application. (ROR #17 and #20.)
On March 15, 1990 the Zoning Board of Appeals denied Cedar West's application for variances. (ROR #30 copy of Memorandum to Zoning Commission from the Plan Review Committee.) On March 26, 1990 Cedar West requested a 65-day extension of time for review of its application for a special permit. (ROR #31 copy of letter to Michael Wrinn, Norwalk Zoning Commission from Michael W. Lyons.) On April 27, 1990 Cedar West submitted redesigned plans for the project reflecting the Zoning Board of Appeal's concerns in the denial of the requested variances. (ROR #33 copy of letter to Michael Wrinn from Michael W. Lyons.) At a regular meeting of the Planning Zoning Committee held on May 24, 1990 the Committee reviewed the February 21, 1990 meeting and revised plans by Cedar West to relocate a couple of dwelling units and to shift the roadway over 25 feet so that variances would not be required. (ROR #34 Minutes of Committee Meeting held May 24, 1990.) Cedar West's attorney Michael Lyons testified in support of the revised plans and no one spoke in opposition. (ROR #34.)
At the regular meeting of the Norwalk Zoning Commission held on June 20, 1990, the Commission unanimously approved Cedar West's special permit application with five conditions attached. (ROR #40 Copy of Minutes of Norwalk Zoning Commission Regular Meeting held June 20, 1990.) Notice of the Commission's decision was published in The Hour on June 28, 1990. (ROR #42 Copy of Publisher's Affidavit regarding actions taken at the Norwalk Zoning Commission Meeting held on June CT Page 4720 20, 1990.) It is from the Commission's approval of special permit application #26-89 SP that the instant appeal arises. The Commission has adopted the brief of defendant Cedar West.
In order to take advantage of a statutory right to appeal from a decision of an administrative agency, there must be strict compliance with the statutory provisions which created that right. Simko v. Zoning Board of Appeals, 206 Conn. 374, 377, 538 A.2d 202
(1988.) These provisions are mandatory and jurisdictional; failure to comply subjects the appeal to dismissal. Id. Appeals from zoning commissions are to be taken pursuant to section 8-8. General Statutes 8-9.
Aggrievement is a prerequisite to maintaining an appeal. Smith v. Planning Zoning Board, 203 Conn. 317, 321, 524 A.2d 1128
(1987.) At the hearing held in this appeal on September 18, 1991, the court heard testimony from Maria Scott Daniel regarding aggrievement, and a warranty deed in support of that testimony was submitted. (Plaintiff's exhibit A, September 18, 1991.) At the September 18, 1991 hearing, the court ruled from the bench finding aggrievement.
"[A]ny person aggrieved by any decision of a board may take an appeal to the superior court. . . . The appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published." General Statutes 8-8(b) "[F]ailure to make service within fifteen days on parties other than the board shall not deprive the court of jurisdiction over the appeal." General Statutes 8-8(f). Notice of the Commission's decision was published on June 28, 1990. (ROR #42). The Town Clerk, the Assistant City Clerk, the Clerk of the Zoning Commission, and the Chairman of the Zoning Commission were all served on July 13, 1990, within the fifteen-day appeal period. Although defendant Cedar West was served on July 25, 1990, which exceeds the fifteen-day appeal period, the court maintains jurisdiction over the appeal pursuant to General Statutes 8-8(f).
Plaintiffs argue that the Commission relied on Cedar West's incorrect statements regarding ownership of the subject property. Plaintiffs argue that Cedar West has routinely included all four parcels of land for the proposed development without any distinction as to what portion is City land and what portion belongs to the applicant. Plaintiffs allege that Cedar West will never own all four parcels at the same time. Plaintiffs argue that Cedar West did not have a contract to purchase the city land until after the zoning proceedings were concluded and that this deprived the Commission of jurisdiction over the application. Plaintiffs argue that Cedar West lacked standing to make an application regarding land it had no legal interest in. Defendants argue that the CT Page 4721 applicant at all times properly stated its interest in the subject properties. Defendants further argue that Cedar West's contract to purchase the R.O.W. from the City was entered into at the moment it was approved by Norwalk Common Council and therefore Cedar West had standing to apply for the special permit.
"Where zoning ordinances have not specifically required owners to apply or to authorize the application, [the Connecticut Supreme Court] has sustained the issuance of permits to persons who were not owners but who did have substantial interests in the subject property." Richards v. Planning and Zoning Commission,170 Conn. 318, 321-22, 365 A.2d 1130 (1976). The Norwalk Building Zone Regulations provide in 118-1450 B(1) the following: "An application for a Special Permit shall be filed with the staff of the Planning and Zoning Commission and shall be accompanied by a filing fee" The Norwalk Zoning Regulations do not articulate who may apply for a special permit. The issue, therefore, is whether Cedar West possesses a substantial interest in the property to have standing to apply for a special permit for all four parcels of the subject property. To determine whether a nonowner applicant has a substantial interest in the property, the Connecticut Supreme Court set out the following factors:
 Whether the applicant is in control of the property, whether he is in possession or has present or future right to possession, whether the use applied for is consistent with the applicant's interest in the property, and the extent of the interest of other persons in the same property, are all relevant considerations in making that determination.
Richards v. Planning and Zoning Commission, supra, 325.
Cedar West owns three of the four parcels in question and there is no dispute that Cedar West has standing to apply for a special permit regarding lots 153, 286 and 326. The dispute concerns only the right of way. There is ample evidence in the record regarding the City's ownership of the R.O.W. and the pendency of the land swap. Approximately seven months prior to Cedar West's application, the Common Council by a 12 to 2 vote authorized Mayor Frank J. Esposito to execute an agreement with Cedar West to swap the right of way for a parcel of equal size and value. (Supplemental ROR #51 certified copy of page 6 of the May 23, 1989 Common Council Meeting, ROR #6 Copy of Common Council agenda dated May 23, 1989.) "A land swap is pending with the city to allow the applicants title to the northern section of the unimproved Twin Ledge Road. In return the city would accept a portion of the land designated as conservation land." (ROR #19 Memo from Plan Review committee to Zoning Commission, ROR #30 Memorandum from Plan Review Committee CT Page 4722 to the Zoning Commission, ROR #39 Memorandum from Zoning Committee to the Zoning Commission.)
Additionally, references to the land swap appear in the minutes of the Commission's regular meeting held June 20, 1990 approving the application, (ROR #40 at 21) and in condition #2 in the formal letter of approval. (ROR #43.) Although the applicant Cedar West is not in control of the right of way property, the record reflects that the Common Council authorized the mayor to execute an agreement with Cedar West to swap the right of way for land of equal size and value. This authorization creates a reasonable expectancy for Cedar West to have a future right to possession of the right of way.
The proposed use of the right of way is to comprise part of the property for a conservation development consisting of fourteen single family homes. (ROR #2.) The use applied for is consistent with the applicant's interest in the property to establish a conservation development of the area.
The City of Norwalk, which holds title to the right of way, is not contesting Cedar West's right to apply for the permit. Based on the above analysis, Cedar West has sufficient interest in the right of way to have standing to apply for a special permit.
Plaintiffs argue that their due process rights were violated by the Commission's receiving and considering ex parte communications and evidence after the close of the public hearing. The Connecticut Supreme Court has held that
 [W]hile proceedings before zoning and planning boards and commissions are informal and are conducted without regard to the strict rules of evidence . . . nevertheless, they cannot be so conducted as to violate the fundamental rules of natural justice. . . . The commission could not properly consider additional evidence submitted by an applicant after the public hearing without providing the necessary safeguards guaranteed to the opponents of the application and to the public. This means a fair opportunity to cross-examine witnesses, to inspect documents presented and to offer evidence in explanation or rebuttal. . . .
Blaker v. Planning Zoning Commission, 212 Conn. 471, 477-78,562 A.2d 1093 (1989).
The record reveals that on February 21, 1990, a public hearing was held on Cedar West's application for a special permit to construct a conservation development. (ROR #13, #17, #20) The record also reveals that on April 27, 1990 Cedar West submitted redesigned plans of its conservation development to reflect the CT Page 4723 Zoning Board of Appeals' refusal to grant requested variances. (ROR #33, #50.) The record further reveals that at the May 24, 1990 regular meeting of the Planning Zoning Committee, Cedar West's attorney gave testimony regarding the revisions. (ROR #34) The Commission considered evidence and testimony of the revised plans after the February 21, 1990 public hearing without providing the plaintiffs and the public a fair opportunity to cross-examine witnesses, to inspect documents presented and offer rebuttal evidence. Without the ex parte evidence the application would have violated the regulations. Therefore, the Commission's receipt of the ex parte evidence and testimony was improper.
 [O]nce it has been demonstrated that an improper ex parte communication has occurred, a presumption of prejudice arises. Although this presumption is rebuttable, the burden of showing that a prohibited ex parte communication between a commission and an applicant has not prejudiced a party must be allocated to those seeking to uphold the validity of the commission's decision.
Blaker v. Planning Zoning Commission, supra, 480.
In rebuttal to this presumption of prejudice Cedar West argues that "[t]he changes referred to in the additional evidence substantially helped the Plaintiffs, resulting in Commission approval of a location for the main roadway 25 feet farther from the Plaintiff's property than in the original design." (Defendant's Reply Brief dated June 28, 1991 at 12) (emphasis supplied.) The record reveals that at the February 21, 1990 public hearing Mr. Daniels spoke against Cedar West's application and requested that the "project be totally denied." (ROR #20 at 4.) Although the ex parte communications and evidence may have made the project more palatable to the plaintiffs, it does not remove the procedural unfairness and prejudice plaintiffs suffered when the project was approved based on the revised plans. Accordingly, the defendants have failed to satisfy their burden to rebut the presumption of prejudice.
Plaintiffs further argue that "the proposed 14-unit Conservation Development fails to qualify for approval under the Norwalk Building Zone Regulations in at least two essential respects: (a) the proposal fails to set aside sufficient land for conservation purposes; and (b) there is insufficient land to support the construction of 14 dwelling units." (Plaintiff's Brief dated January 18, 1991 at 7.)
Cedar West argues that it always properly stated its interest in the subject property. Cedar West also argues that it set aside sufficient land for conservation purposes and to support the construction CT Page 4724 of 14 dwelling units. Cedar West argues that it had a contractual right to acquire the right of way. Cedar west argues it is entitled to include the R.O.W. in its computations because it will own all four parcels of land. Cedar West explains that first, the City will deed over the R.O.W. to Cedar West. Second, Cedar West will dedicate conservation land back to the City pursuant to the zoning regulations and deed back land to the City under the land swap contract. Cedar West contends that at the point in time of the dedication, Cedar West would own the entire parcel and would comply with all of the applicable conservation development zoning regulations.
"A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulations." A.P. W. Holding Corp. v. Planning Zoning Board,167 Conn. 182, 185, 355 A.2d 91 (1974.) "When considering an application for a special permit, the board acts in an administrative capacity." Id. at 184-85. "[T]he board's function is to determine whether the applicant's proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and the statute are satisfied." Housatonic Terminal Corp. v. Planning Zoning Board, 168 Conn. 304, 307,362 A.2d 1375 (1975.) The zoning regulations, and not the zoning authority, determine what uses may be allowed as special exceptions. WATR Inc. v. Zoning Board of Appeals, 158 Conn. 196,200, 257 A.2d 818 (1969.) The terms "special permit" and "special exception" have the same legal import and are used interchangeably. A.P. W. Holding Corp., 167 Conn. 182, 185,355 A.2d 91 (1974.)
The Norwalk Building Zone Regulations requirements for setting aside land for conservation purposes in a conservation development are as follows:
D. Conservation land requirements
 (1) An area within each conservation development equal to not less than forty percent (40%) of the total area of the parcel shall be designated as conservation land. Said conservation land shall be located entirely within the conservation development, shall have suitable pedestrian access from an existing or or proposed street, shall result in preservation of such land as open space and shall have shape, dimensions, character and location to accomplish the purpose and intent of Subsection A of this section. [Amended effective 8-24-84].
118-410 D(1) (ROR #44.)
Cedar West's tabulation of the conservation development area and the required conservation land is presented in ROR #48. CT Page 4725 Cedar west represents that the total conservation development area is 214,208 square feet or 4.9175 acres. (ROR #48.) Cedar West has included both the City of Norwalk's land and Cedar West's land in its tabulations. (ROR #46, ROR #48.) The record reveals that Cedar West has contributed 175,215 square feet or 4.02 acres of land for its conservation development. (ROR #46.) The record further reveals that Cedar West has included in its conservation development, 38,992 square feet of land contributed by the City of Norwalk. (ROR #24, #46.) Cedar West calculates that 40% of 214,208 equals approximately 85,684 square feet and has shaded the area on ROR #48 to indicate the location of the area that has been set aside as proposed conservation land. (ROR #48).
Approximately 37,860 square feet of the proposed 85,684 square feet of conservation land is land that the city will receive in the land swap. (ROR #48).
The Zoning Regulations provide that "[a]n area within each conservation development . . . shall be designated as conservation land. Said conservation land shall be located entirely within the conservation development" 118-410 D(1). (Emphasis added). Common sense and the weight of the evidence show that Cedar West will never have more than 175,216 square feet in its conservation development. The reason for this is 38,992 square feet of the 214,208 square feet of land will be continuously owned by the City due to the land swap agreement. (ROR #24, #46.) The court is not persuaded by Cedar West's argument that there is a moment in time, when the conservation land is dedicated, that Cedar West will own the entire site. Cedar West has failed to cite any authority supporting its moment in time argument. Cedar West is creating a fiction by including the City's land via the land swap agreement in its conservation development.
Because 37,860 square feet of the land contributed by the City was designated as proposed conservation land, it should be subtracted from the 85,684 square feet of proposed conservation land. This leaves 47,824 square feet of conservation land located within the conservation development. Cedar West's conservation development of 175,216 square feet requires approximately 70,086 square feet designated as conservation land. Since only 47,824 square feet are located within the conservation development, the proposal fails to set aside sufficient conservation land to qualify for approval under the regulations.
The next issue that plaintiffs raise is whether there is sufficient land to support the construction of 14 dwelling units. The Norwalk Building Zone Regulations provide in pertinent part:
(3) The maximum number of dwellings permitted in a conservation CT Page 4726 development shall be determined by dividing the total acreage of the parcel by the minimum lot size permitted in the zone and multiplying the result by ninety hundredths (.90.) A fraction of one-half (1-1/2) or more shall be rounded off to the next higher whole number.
 (a) Parcels which contain a body of water, a designated inland wetland or watercourse or tidal wetland shall include only fifty percent (50%) of said body of water or designated wetland area in arriving at the maximum number of dwelling units permitted above; and
 (b) For parcels which have two (2) or more zone designations, the maximum number of dwellings permitted shall be determined by the land area within each zone.
118-410c(3)(a), (b) (ROR #44).
Cedar West's calculation of the maximum number of dwelling 13 units permitted in its conservation development is presented in ROR #48. Cedar West represents that the Conservation Development site area is 214,208 square feet or 4.9175 acres. (ROR #48.) For the same reasons as cited above, Cedar West's conservation development square footage and acreage should be reduced by subtracting the land contributed by the City. The total acreage of the parcel refers to land in the conservation development and not abutting lands. If the total area is reduced by 38,992 square feet of the City's land, 175,215 square feet or 4.02 acres of land remains for conservation development. The number of allowable dwelling units for that area is not 14 but approximately 11. Therefore, Cedar West's proposed 14 dwelling units exceed the regulations' provisions.
As discussed above, Cedar West has failed to set aside sufficient conservation land and has exceeded the number of allowable dwelling units. Accordingly, the plaintiffs have satisfied their burden in establishing that the Commission acted illegally arbitrarily or abused its discretion in finding that the plans comply with the zoning regulations.
There is an insufficient amount of conservation land, an excess of the number of allowable dwelling units and prejudicial ex parte communications and evidence. The plaintiffs have satisfied their burden that the Commission has acted illegally and arbitrarily in granting Cedar West's special permit application. Accordingly, the plaintiffs' appeal is sustained. CT Page 4727