[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM
On April 3, 2001, Richard Littauer applied for permission to conduct a regulated activity within an inland wetland or watercourse area in the town of Barkhamsted for purposes of constructing a farm pond. The property in issue is owned by the Pleasant Valley Company, LLC, and is operated by Littauer pursuant to a lease. The pond was to be constructed within the boundaries of wetlands and a watercourse, and Littauer had previously obtained permission from the Department of Environmental Protection and the Army Corps of Engineers. On April 3, 2001, a public hearing was held to consider the acceptance of the permit application and to determine whether to schedule a public hearing. At the meeting, Littauer asserted that the pond construction was permitted as a matter of right. The commission disagreed and concluded that the pond was a CT Page 10740 regulated activity and set a date for a hearing for May 1, 2001. That public hearing began on May 1, 2001, and was continued to June 5, 2001, July 18, 2001 and August 7, 2001. At these meetings, the commission considered testimony regarding the impact on wetlands in the area of the proposed work. On August 8, 2001, pursuant to Sec. 22a-42a of the General Statutes, the commission denied the application. Notice of the commission's decision appeared in the Hartford Courant on August 10, 2001.
Littauer commenced an appeal by service of process on August 20, 2001, in accordance with Sec. 22a-43 (a) of the General Statutes, which appeal was amended on January 14, 2002. On October 3, 2001, the defendants moved to dismiss Littauer's appeal for lack of subject matter jurisdiction as to the town of Barkhamsted, its inland wetlands commission, the individual members of the commission, and certain claims for relief. On November 11, 2001, the court granted the motion to dismiss as to the claims for relief and as to the town and the individual commissioners, but denied the motion as to the commission.
Littauer raises the following issues: (1) Did the commission improperly conclude that the proposed farm pond is a regulated activity which requires a permit; and (2) Did the commission improperly deny the application for the permit?
Pleading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal. Aggrievement is a question of fact and the burden of proving it is on the plaintiff. Munhall v. Inland Wetlands Commission, 221 Conn. 46, 50
(1992).
"The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision." (Internal quotation marks omitted.) Munhall v. Inland Wetlands Commission, supra, 51.
Littauer alleges that he is a tenant with the exclusive right to use and farm approximately one hundred sixty (160) acres of land under a twenty year lease dated July 1, 1998, from the Pleasant Valley Company, LLC. At oral argument, Littauer offered the lease as evidence to establish his tenancy. Because Littauer is the tenant in possession and control of the land which is the subject of the commission's decision, he CT Page 10741 enjoys the requisite legal interest to establish aggrievement. SeeRichards v. Planning and Zoning Commission, 170 Conn. 318, 323-24 (1976) (lessee is aggrieved if he is a tenant in possession and control of the subject property and was the applicant to the defendant agency.) A finding of aggrievement may enter.
Section 22a-43 (a) provides in relevant part that an appeal from a decision by the inland wetlands commission must be commenced "within the time specified in subsection (b) of section 8-8 from the publication of such . . . decision or action. . . . Notice of such appeal shall be served upon the inland wetlands agency and the commissioner." Additionally, "[t]he commissioner may appear as a party to any action brought by any other person within thirty days from the date such appeal is returned to the court." Section 8-8 (b) of the General Statutes provides in relevant part that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) [now subsections (f) and (g)] of this section within fifteen days from the date that notice of the decision was published as required by the general statutes."
The record contains an affidavit of publication attesting that notice of the commission's decision was published in the Hartford Courant on August 10, 2001. On August 19, 2001, service of process was made on the chairman of the commission as well as on the individual members of the commission. On August 20, 2001, service was made on Maria Mullady, the Barkhamsted town clerk, and upon Arthur Rocque, Commissioner of Environmental Protection. The chairman of the commission and the town clerk were served less that fifteen days after the issuance of the notice of the denial of the permit application, and the appeal was timely commenced.
In challenging an administrative agency action, the plaintiff has the burden of proving that the commission acted improperly. Samperi v. InlandWetlands Agency, 226 Conn. 579, 587-88 (1993). "The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion. Rather than asking the reviewing court to retry the case de novo . . . the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision. . . ." (Internal quotations mark omitted.) Newtown v. Keeney, 234 Conn. 312, 319 (1995).
"In reviewing [a] decision made pursuant to the act, the reviewing court must sustain the [commission's] determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative CT Page 10742 agency. . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t imposes an important Limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . The United States Supreme Court, in defining substantial evidence in the directed verdict formulation, has said that it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . ." (Internal quotation marks omitted.) Newtown v. Keeney, supra, 319-20. When deciding matters involving technically complex issues the board bases its decision upon reliable, probative evidence for the nature and probability of any potential adverse impact on the wetlands. See Feinson v. Conservation Commission, 180 Conn. 421, 427-29 (1980).
Littauer first argues that there is no statutory authority to support the commission's decision that the construction of the pond is a regulated activity. He contends that the pond and the pond construction are a nonregulated agricultural operation and use exempted from the regulations pursuant to Sec. 4.1(a) of the town's regulations. In response, the commission asserts that it only reviewed and made a decision on an application for a permit to conduct a regulated activity. The commission claims that Littauer recognized that the pond project was a regulated activity by applying for permission to conduct a regulated activity. It argues that he did not apply for, or request, a declaratory ruling as to whether the proposed work was a regulated activity. It contends that it was never asked whether the pond project was a regulated activity. Because the commission was never asked to decide whether the pond project was a regulated activity, the decision ultimately rendered did not address that issue.
Section 22a-40 (a)(1) of the General Statutes provides, inter alia, "[t]he following operations and uses shall be permitted in wetlands and watercourses, as of right: (1) Grazing, farming, nurseries, gardening and harvesting of crops and farm ponds of three acres or less essential to the farming operation. . . . The provisions of this subdivision shall not be construed to include road construction or the erection of buildings not directly related to the farming operation, relocation of watercourses CT Page 10743 with continual flow, filling or reclamation of wetlands or watercourses with continual flow, clear cutting of timber except for the expansion of agricultural crop land, the mining of top soil, peat, sand, gravel or similar material from wetlands or watercourses for the purposes of sale
The town's regulatory analogue similarly provides that "[t]he following operations and uses shall be permitted in inland wetlands and watercourses, as of right: (a.) grazing, farming, nurseries, gardening and harvesting of crops and farm ponds of three acres or less essential to the farming operation. . . . The provisions of this subdivision shall not be construed to include road construction or the erection of buildings not directly related to the farming operation, relocation of watercourses with continual flow, clear cutting of timber except for the expansion of agricultural crop land, or the mining of top soil, peat, sand, gravel or similar material from wetlands or watercourses for the purposes of sale."[1]
Section 22a-38 (13) of the General Statutes as well as Sec. 2.1 of the regulations, defines a regulated activity as "any operation within or use of a wetland or watercourse involving removal or deposition of material, or any obstruction, construction, alteration or pollution, of such wetlands or watercourses, but shall not include the specified activities in section 22a-40."
In this case, Littauer's application sought permission to conduct a regulated activity within an inland wetland or watercourse area in the town of Barkhamsted for a proposed activity that would involve alteration, deposition of material and removal of material within an inland wetland or watercourse area. He further provided on the application that the proposed activity is primarily for agricultural purposes, as well as involving construction, filling or excavation of an inland wetland or watercourse area. The application announced that the purpose of the activity was to construct a farm pond. In reviewing the minutes from the April 3, 2001 meeting, the record reveals that Littauer had asserted that raising trout was an agricultural activity and that agricultural ponds are permitted as a matter of right. The commission disagreed and stated that it was a regulated activity.
At the May meeting, the commission reiterated its decision that the pond construction was a regulated activity. It further added that removal and deposition of material in wetlands is deemed a significant activity and that the pond was not essential to the farming operation.
Section 4.4 of the regulations provides that "any person proposing to carry out a permitted or nonregulated operation or use of a wetland or watercourse that may disturb the natural and indigenous character of the CT Page 10744 wetland or watercourse shall, prior to commencement of such operation or use, notify the Agency on a form provided by it, and provide the Agency with sufficient information to enable it to properly determine that the proposed operation and use is a permitted or nonregulated use of the wetland or watercourse."
Here, Littauer did not provide notice to the commission that he sought permission to conduct a nonregulated activity, nor did he supply the commission with information for it to properly determine whether such activity could be considered a nonregulated activity. Instead, he applied for a permit to conduct a regulated activity. At the April meeting, the commission, upon reviewing the application, determined that it would hold a public meeting to review the application. Littauer did not request a determination as to whether the proposed activity was regulated or nonregulated. The commission quite properly considered the application in the manner in which it had been presented.
Littauer argues that the commission improperly denied his application. Specifically, he argues that the notice of denial does not list the reasons for the commission's denial or any alternatives, which are required by statute. He continues by arguing that the commission failed to consider all of the substantial material he and the professionals presented to the commission, but instead focused on its own narrow interpretation of some of the material. He further contends that any reasons the court finds in the record are not supported by substantial evidence. Littauer also argues that the commission predetermined its denial of the pond permit. He also contends that the commission failed to evaluate the evidence and acted arbitrarily in denying the permit.
In response, the commission asserts that it has stated the reasons on the record. It further contends that Littauer failed to demonstrate that the proposed pond was essential for farming operations as required by the statute. The commission also maintains that Littauer failed to propose feasible and prudent alternatives to the proposed farm pond.
Section 22a-42a (d)(1) of the General Statutes provides: "(1) In granting, denying or limiting any permit for a regulated activity the inland wetlands agency . . . shall consider the factors set forth in section 22a-41, and such agency . . . shall state upon the record the reason for its decision. . . ."[2]
Section 22a-42 sets forth the functions and responsibilities of municipal inland wetlands agencies. An inland wetlands agency's "environmental authority is limited to the wetland and watercourse area that is subject to their jurisdiction." Nizzardo v. State TrafficCommission, 259 Conn. 131, 151 (2002). In reviewing permit applications, CT Page 10745 the commission acts in an administrative capacity and the trial court, on appeal, determines, whether substantial evidence in the record exists to reasonably support the commission's decision. Strong v. ConservationCommission, 28 Conn. App. 435, 440, 611 A.2d 427, cert. granted,224 Conn. 902, 615 A.2d 1046 (1992), appeal dismissed, 226 Conn. 227,230, 627 A.2d 431 (1993). The court must review the record to determine if there exists a logical basis for the facts found and the conclusions reached by the commission; if substantial evidence in the record supports any valid reason for denying [Littauer's] permit application, the court must sustain the decision of the commission. Samperi v. Inland WetlandsAgency, supra, 588-89.
Section 22a-41 (a) and Sec. 10.2 of the regulations set forth the guidelines the commission shall take into consideration when deciding whether to grant a permit. Section 22a-41 (a) provides in pertinent part:
 [T]he commissioner shall take into consideration all relevant facts and circumstances, including but not limited to:
 (1) The environmental impact of the proposed regulated activity on wetlands or watercourses;
 (2) The applicant's purpose for, and any feasible and prudent alternatives to, the proposed regulated activity which alternatives would cause less or no environmental impact to wetlands or watercourses;
 (3) The relationship between the short-term and long-term impacts of the proposed regulated activity on wetlands or watercourses and the maintenance and enhancement of long-term productivity of such wetlands or watercourses;
(4) Irreversible and irretrievable loss of wetland or watercourse resources which would be caused by the proposed regulated activity, including the extent to which such activity would foreclose a future ability to protect, enhance or restore such resources, and any mitigation measures which may be considered as a condition of issuing a permit for such activity including, but not limited to, measures to (A) prevent or minimize pollution or other environmental damage, (B) maintain or enhance existing environmental quality, or (C) in the following order of priority: Restore, enhance and create productive wetland or watercourse resources; CT Page 10746
 (5) The character and degree of injury to, or interference with, safety, health or the reasonable use of property which is caused or threatened by the proposed regulated activity, and
 (6) Impacts of the proposed regulated activity on wetlands or watercourses outside the area for which the activity is proposed and future activities associated with, or reasonably related to, the proposed regulated activity which are made inevitable by the proposed regulated activity and which may have an impact on wetlands or watercourses. . . .
Section 22a-41 (b)(1) recites that "[i]n the case of an application which received a public hearing . . . a permit shall not be issued unless the commissioner finds on the basis of the record that a feasible and prudent alternative does not exist. In making his finding the commissioner shall consider the facts and circumstances set forth in subsection (a). The finding and the reasons therefor shall be stated on the record in writing."[3]
Section 22a-41 (b)(2) provides that "[i]n the case of an application which is denied on the basis of a finding that there may be feasible and prudent alternatives to the proposed regulated activity which have less adverse impact on wetlands or watercourses, the commissioner or the inland wetlands agency . . . shall propose on the record in writing the types of alternatives which the applicant may investigate provided this subdivision shall not be construed to shift the burden from the applicant to prove that he is entitled to the permit or to present alternatives to the proposed regulated activity."[4]
At the July 18, 2001 public hearing, the commission heard testimony from Sigrun Gadwa, principal field ecologist from Ecological Services, LLC.[5] At the August 7, 2001 public hearing, the commission reiterated Gadwa's testimony and discussed the following details: (1) the wetland area in question is spaghnum wetland, it is not tolerant of much disturbance in particular in the sediments or in the reduction in the amount of flow and that it's a unique type of site; (2) a thousand-foot corridor of groundwater seepage wetlands exists that would be permanently altered by the construction of the dam and pond in the area; (3) the proposed activity would also reduce flow and perhaps eliminate flow in the lower reaches of the brook that currently flows through the site; (4) in drought conditions that would further alter the character of this wetlands; (5) threatened species would be affected, and invasive species may result if the proposed pond happens; (6) the activity would raise the CT Page 10747 temperature in the wetlands; and (7) spaghnum is sensitive to sedimentation.[6]
Before the commission voted on the application, Commissioner Dileo stated "[b]ecause there may be feasible and more prudent alternatives to the proposed activity which have less adverse impact on the wetlands and watercourse of the wetlands, the applicant may investigate the following types of alternatives. propose a different location for the pond in say an uplands area, or not touch [wetlands] at all and enjoy the beauty of it as it is."[7] The motion to deny the application was seconded and carried unanimously.
In addition, Littauer argues that "any reasons that the court may speculate about are not reasonably supported by substantial evidence."[8]
As indicated above, however, the commission did provide reasons and alternatives.
 [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the [decision] of [the board] on the basis of challenges . . . that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims. . . .
 Although we allow pro se litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law.
(Citation omitted; internal quotation marks omitted.) Tomaszek v.Girard Motors, Inc., 70 Conn. App. 122, 123-24 (2002). In this case, Littauer offers conclusory statements throughout his brief, however, he has not provided this court with analysis of his claims. Therefore, it is submitted that the court need not address this argument and may consider it abandoned.
Littauer also argues that there is no substantial evidence to support the denial of the permit for the construction of a home site. The CT Page 10748 application did not seek a permit for construction of a home site. Furthermore, at the May 1, 2001 public hearing the commission advised Littauer that he must file another application for the home site since it was not included on this permit application. Therefore, the commission did not act improperly in not considering the application with respect to the home site.
The appeal is, accordingly, dismissed.
Moraghan, J.T.R.