[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On August 9, 2001, Richard Littauer submitted a "notification of intent" to conduct nonregulated activities within an inland wetland or watercourse area pursuant to the town of Barkhamsted Inland Wetlands and Watercourses Regulations. The notification provided that the proposed activities included: (1) harvesting of peat moss at a pond site[1]
CT Page 10749 and, (2) maintenance of a road, including replacement of a wooden culvert, which was necessary for timber harvesting. The property upon which the proposed activities were to take place is located on 11 Case Road in Barkhamsted, Connecticut, which property is owned by the Pleasant Valley Company, LLC, and is operated by Littauer pursuant to a lease.
On August 21, 2001, the commission conducted a special meeting during which it considered, and acted upon, Littauer's "notification of intent" to conduct a nonregulated agricultural activity. In a letter addressed to Littauer, dated August 21, 2001, the commission determined that the pond activity outlined in the peat moss harvest plan required a permit. It further stated that some activities associated with the harvesting of peat moss may be regulated activities. In considering the road maintenance project, the commission stated that Littauer had not adequately demonstrated that a road, which would support 18-wheel trucks is essential to the farming operation. It further responded that such a project involves significant deposition of material in a wetland, therefore, a permit would be required pursuant to both Sec. 22a-40 (a)(1) of the General Statutes, and the town's regulation, Sec. 4.1(a). Finally, the commission, responding to the reference to a road to the future home site in the "notice of intent," concluded that home construction in a wetland required a permit.
On September 5, 2001, Littauer instituted an appeal which was amended on December 10, 2001. On October 3, 2001, the defendants moved to dismiss Littauer's appeal and complaint for lack of subject matter jurisdiction as to the town of Barkhamsted, the inland wetlands commission, the individual members of the commission, and as to certain claims for relief. On November 1, 2001, the court granted the motion to dismiss as to the claims for relief and as to the town and the individual commissioners, but denied the motion as to the commission. The commission filed the return of record on October 29, 2001. On January 14, 2002, Littauer sought to supplement and complete the record, which the commission opposed. The court, on January 28, 2002, delayed the decision to supplement and complete the record until trial. The court heard testimony and oral argument on April 29, 2002. At oral argument, the court denied Littauer's motion to supplement and complete the record. Littauer alleges a number of claims. The only claim briefed and, therefore, addressed by the court, is whether the road improvement work may be conducted as a nonregulated agricultural use and operation as of right under the town's regulation Sec. 4.1.[2]
Pleading and proof of. aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal. Aggrievement is a question of fact and the burden of proving aggrievement is on the plaintiff. Munhall v. Inland Wetlands Commission, CT Page 10750221 Conn. 46, 50 (1992).
"The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision." (Internal quotation marks omitted.) Munhall v. Inland Wetlands Commission, supra, 51.
Littauer alleges that he is a tenant with the exclusive right to use and farm approximately one hundred sixty (160) acres of land under a twenty year lease dated July 1, 1998, granted by the Pleasant Valley Company, LLC. At oral argument, Littauer offered the lease as evidence to establish his tenancy. A lessee is aggrieved if he is a tenant in possession and control of the subject property and was the applicant to the defendant agency. See Richards v. Planning Zoning Commission,170 Conn. 318, 323-24 (1976). Because Littauer is the tenant in possession and control of the land that is the subject of the commission's decision, he possesses the requisite legal interest to establish aggrievement. Accordingly, the court may find that Littauer has established aggrievement for the purposes of Sec. 22a-43 (a) of the General Statutes.
The next issue is whether or not Littauer timely served the defendants. Section 22a-43 (a) provides in relevant part that an appeal from a decision by the inland wetlands commission must be commenced "within the time specified in subsection (b) of section 8-8 from the publication of such . . . decision or action. . . . Notice of such appeal shall be served upon the inland wetlands agency and the commissioner." Additionally, "[t]he commissioner may appear as a party to any action brought by any other person within thirty days from the date such appeal is returned to the court." Section 8-8 (b) of the General Statutes provides in relevant part that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) [now subsections (f) and (g)] of this section within fifteen days from the date that notice of the decision was published as required by the General Statutes."
Here, no public hearing was held on this matter; however, the commission did hold a special meeting. The commission's decision that the road maintenance was a regulated activity was not published. Instead, the commission sent Littauer a written notice of its decision dated August 21, 2001. On September 4, 2001, service of process was made on the chairman of the commission, Jeffery J. Starn, as well as on the CT Page 10751 individual members of the commission. On September 5, 2001, service was made on Maria Mullady, the Barkhamsted town clerk. Since the chairman of the commission and the town clerk were served less than fifteen days after the issuance of the notice, this appeal was timely commenced by service of process on the proper parties.
In challenging an administrative agency action, the plaintiff has the burden of proving that the commission acted improperly. Samperi v. InlandWetlands Agency, 226 Conn. 579, 587-88 (1993). "The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion. Rather than asking the reviewing court to retry the case de novo . . . the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision. . . ." (Internal quotation marks omitted.) Newtown v. Keeney, 234 Conn. 312, 319 (1995).
"In reviewing [a] decision made pursuant to the act, the reviewing court must sustain the [commission's] determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . The United States Supreme Court, in defining substantial evidence in the directed verdict formulation, has said that it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . ." (Internal quotation marks omitted.) Newtown v. Keeney, supra, 319-20.
In concluding that the road maintenance project is a regulated activity therefore requiring a permit, the commission determined that Littauer had not adequately demonstrated that a road large enough for 18-wheel trucks to use is essential to the farming operation. The commission further CT Page 10752 stated that logging operations in the past have used single lane dirt roads with temporary wetland crossings. Additionally, it concluded that the road maintenance project involves significant deposition of material in a wetland.
Littauer argues that the commission's decision is not supported by substantial evidence in the record and that his proposed road maintenance project on his farm is "as of right" under the commission's "as of right agricultural exemption" and not subject to municipal regulation by permit under the wetlands regulations. He asserts that the road operation is directly related to the farming operation. He further maintains that there is no planned significant deposits of material into a wetland. He contends that he outlined, in detail, the proposed agricultural maintenance work and gave many agricultural reasons for the essential and necessary work. He further claims that he provided the commission with the history of prior nonregulated agricultural uses and operations on the farm. He continues by arguing that he referenced detailed engineering plans for the work already on file with the commission on a previous application.
In response, the commission argues that the project does not fall within the exemption because Littauer failed to demonstrate that the road project was directly related to the farming operation and the proposed road project includes the filling of wetlands and, therefore, is a regulated activity and not permitted as of right.
Section 22a-42a (a) provides that "[t]he inland wetlands agencies authorized in section 22a-42 shall through regulation provide for . . . (4) criteria and procedures for the review of applications and (5) administration and enforcement." Regulation, Sec. 4.4 provides that "any person proposing to carry out a permitted or nonregulated operation or use of a wetland or watercourse that may disturb the natural and indigenous character of the wetland or watercourse shall, prior to commencement of such operation or use, notify the Agency on a form provided by it, and provide the Agency with sufficient information to enable it to properly determine that the proposed operation and use is a permitted or nonregulated use of the wetland or watercourse."
Section 22a-40 (a)(1) provides, inter alia, that: "[t]he following operations and uses shall be permitted in wetlands and watercourses, as of right: (1) Grazing, farming, nurseries, gardening and harvesting of crops and farm ponds of three acres or less essential to the farming operation. . . . The provisions of this subdivision shall not be construed to include road construction or the erection of buildings not directly related to the farming operation, relocation of watercourses with continual flow, filling or reclamation of wetlands or watercourses with CT Page 10753 continual flow, clear cutting of timber except for the expansion of agricultural crop land, the mining of top soil, peat, sand, gravel or similar material from wetlands or watercourses for the purposes of sale."
Section 4.1 of the Municipal Regulations provides that "[t]he following operations and uses shall be permitted in inland wetlands and watercourses, as of right: a. grazing, farming, nurseries, gardening and harvesting of crops and farm ponds of three acres or less essential to the farming operation. . . . The provisions of this subdivision shall not be construed to include road construction or the erection of buildings not directly related to the farming operation, relocation of watercourses with continual flow, clear cutting of timber except for the expansion of agricultural crop land, or the mining of top soil, peat, sand, gravel or similar material from wetlands or watercourses for the purposes of sale."
Regulation, Sec. 4.4 provides that it is the applicant's burden to supply the commission with adequate information in order for it to make its determination. To support his position, Littauer, in his brief, references a book by the United States Department of Agricultural entitled Permanent Logging Roads for Better Woodlot Management, and engineering plans detailing the scope of the road maintenance work. These materials, however, are not part of the record and will not be considered by the court. The only information that Littauer provided to the commission to assist it with its decision was the information supplied in the application itself.
A review of the application, establishes that the proposed activity will involve alteration, deposition and removal of material within an inland wetland or watercourse area, as well as, include the "construction, filling or excavation" of an inland wetland area, thereby supporting the commission's decision.[3]
While Littauer asserts in his brief that the proposed activity is primarily for agricultural purposes[4] and, pursuant to the General Statutes and the town's regulations, is exempted from regulation. Statutes and the regulations, however, expressly provide that road construction not directly related to the farming operation does not fall within the "as of right agricultural exemption." See Sec. 22a-40 (a)(1); Regulation, Sec. 4.1. However, Littauer's project description for the road maintenance project submitted with the application states that the road is necessary for a major timber harvest of 750,000 board feet of lumber. The project description also provides reasons why the road maintenance is necessary including that (1) the land near Case Road is of insufficient quality and size for a landing for this operation, (2) it CT Page 10754 would not be environmentally sensitive to drag that much product over the existing road by the pond, (3) it would be insensitive to conduct the operation near neighbors on Case Road and Shannon Drive, and (4) it would minimize the impact at the Shannon Drive access due to wetland crossings that would be necessary on that piece. The project description also provides a brief description of the proposed activity, which includes replacing a wooden culvert with a concrete one and improving the base of the road to handle heavy equipment. Despite Littauer's bare assertion that this project is primarily for agricultural purposes, the project description does not contain any components associated with agriculture purposes. Furthermore, there is nothing in the record to support a conclusion that the road maintenance is related to the farming operation. Rather, a review of the record establishes that the information supplied by Littauer on his application enabled the commission to determine that the road maintenance was not directly related to the farming operation and, thus, would be considered a regulated activity requiring a permit. Littauer, therefore, has not met his burden of demonstrating that the commission acted improperly.
The evidence in the record clearly supports the commission's reasons for its decision that the road maintenance project is a regulated activity requiring a permit. The appeal is, accordingly, dismissed.
Moraghan, J.T.R.